In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-1043

STEPHEN HANES,

*Plaintiff-Appellee*,

*v.*

THOMAS ZURICK, *et al.*,

*Defendants-Appellants*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 2714—**Charles R. Norgle, Sr.**, *Judge.*

ARGUED JULY 8, 2009—DECIDED AUGUST 18, 2009

Before ROVNER, WOOD, and WILLIAMS, *Circuit Judges.*

WOOD, *Circuit Judge.* Stephen Hanes sued the Village
of Grayslake, Illinois, and eleven officers of its police
department, alleging that the officers denied him—and
only him—equal protection of the law, solely for reasons
of personal animus. Relying on *Hilton v. City of
Wheeling*, 209 F.3d 1005 (7th Cir. 2000), the district court
denied the officers' motion to dismiss, which sought
dismissal both on the basis of qualified immunity and for

failure to state a claim. Under *Hilton*, a plaintiff states such a claim by alleging that "the police decided to withdraw all protection . . . out of sheer malice." *Id.* at 1007. Focusing on their qualified immunity theory, the officers filed this interlocutory appeal, in which they invite us to reconsider *Hilton* in light of the Supreme Court's holding in *Engquist v. Oregon Dep't of Agriculture*, 128 S. Ct. 2146 (2008), that no class-of-one equal protection claim can be made in the public-employment context. We reject the officers' invitation. Based on the significant differences between public employment and policing, we hold that *Hilton* remains good law after *Engquist.* We therefore affirm.

# I

Hanes's complaint is straightforward: it alleges that as a result of a long-running and somewhat mysterious dispute with his neighbors, both Hanes and the neighbors have complained repeatedly to the police. Yet when the police respond, they arrest only Hanes, no matter who initiated the complaint. They have arrested him at least eight times, and those arrests have led to thirteen criminal charges for minor crimes. Every single charge was later dropped. According to Hanes, the police have treated him unequally by ignoring his complaints against others and arresting only him because they "hate" him and "do not respect him." Those reasons, Hanes insists, are "unrelated to the police officers' duties."

The officers moved to dismiss Hanes's complaint for failure to state a claim, arguing that selective enforce-

ment of the law can *never* violate the equal protection clause under a class-of-one theory because of the discretion inherent in police power. The officers acknowledged that, under our opinion in *Hilton*, Hanes's allegations state a claim, but they argued that the Supreme Court's opinion in *Engquist* implicitly overruled *Hilton*. The officers also argued that they were entitled to qualified immunity, but they conceded that if the district court refused to revisit *Hilton*, it should reject their qualified immunity argument as well. The district court concluded that it was bound by *Hilton* and denied the officers' motion. Its order did not explicitly mention qualified immunity.

## II

The court's failure to discuss qualified immunity caused us to question whether we have before us a nonappealable order denying a motion to dismiss, see *Khorrami v. Rolince*, 539 F.3d 782, 788 (7th Cir. 2008), or an appealable order rejecting the defense of qualified immunity, see *Mitchell v. Forsyth*, 472 U.S. 511 (1985). In *Gosnell v. City of Troy, Ill.*, 979 F.2d 1257 (7th Cir. 1992), the district court similarly denied the defendants' motions for summary judgment in an order that did not mention qualified immunity. *Id.* at 1259-60. We acknowledged the possibility that "the district court intended to rule on the question of qualified immunity in its order," but we held that without an express "conclusion of law" from the district court, appellate jurisdiction was not proper. *Id.* at 1261. *Gosnell* advises that defendants faced

with uncertainty over whether the district court has rejected a defense of qualified immunity should move the district court to reconsider or clarify; they should not appeal. *Id.* at 1260.

A closer look at this case reveals, however, that it is not the same as *Gosnell.* In *Gosnell*, it was not only unclear whether the district court intended to rule on qualified immunity; it was also unclear whether the defendants intended to raise the defense. *Id.* at 1259. The defendants in *Gosnell* seemed to have forgotten about the issue when they filed a second motion for summary judgment. In the present case, there is no ambiguity about the officers' intent—their motion to dismiss explicitly raises the defense, and their supporting memorandum contains a detailed discussion of the issue. Hanes responded in kind, ensuring that the issue was fully briefed for the district court. Because qualified immunity was unambiguously before the district court, its denial of the motion to dismiss necessarily included a denial of the defense of qualified immunity. See *In re Montgomery County*, 215 F.3d 367, 374 (3d Cir. 2000) (collecting cases).

As the Supreme Court recently reaffirmed in *Pearson v. Callahan*, 129 S. Ct. 808 (2009), two questions are pertinent to the defense of qualified immunity: whether the facts alleged show that the state actor violated a constitutional right, and whether that right was clearly established. *Id.* at 816, referring to *Saucier v. Katz*, 533 U.S. 194 (2001). *Pearson* held that the district court has discretion in choosing the order in which those questions

should be answered; a negative answer to either one is enough to establish the defense of qualified immunity. Here, the district court was able to resolve both parts of the immunity inquiry by reference to *Hilton*: the facts alleged described a violation of a constitutional right, and, in noting that "*Hilton* is squarely on point," the court indicated that the right was clearly established.

*Gosnell* is distinguishable for another reason as well. There, the discussion in the district court's ruling had nothing to do with qualified immunity. *Gosnell*, 979 F.2d at 1260. We were wary of making an appellate ruling without "findings of fact and conclusions of law" from the district court. *Id*. at 1261. Indeed, in general, "an interlocutory appeal is inappropriate where substantial steps remain to be taken in the district court before the facts, and hence the applicable law, are brought into focus." *Khorrami*, 539 F.3d at 787. In the present case, nothing needs to be cleared up, and so there would be no point to a remand for an explicit ruling on qualified immunity.

Finally, accepting jurisdiction over this appeal is consistent with the Supreme Court's reminder that qualified immunity is "both a defense to liability and a limited 'entitlement not to stand trial or face the other burdens of litigation.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1946 (2009) (quoting *Mitchell*, 472 U.S. at 526). Appeals from denials of motions raising the defense are allowed "without regard to the district court's reasons; it is enough that a given order prolongs the litigation and thus (further) impinges on a defendant's potential right not to be

sued." *Asher v. Baxter Int'l, Inc.*, 505 F.3d 736, 739-40 (7th Cir. 2007) (citing *Fairley v. Fermaint*, 482 F.3d 897 (7th Cir. 2007)). (This is not to say that every minor postponement gives rise to a right to appeal; normal scheduling orders designed to facilitate an informed ruling on the defense are permissible. See *Khorrami*, 539 F.3d at 786.) The district court's order gave no indication that it intended to reserve ruling on any of the arguments raised in the motion to dismiss. By signaling its decision on both halves of the qualified immunity inquiry, the district court set the stage for the defendants' interlocutory appeal.

## III

With our jurisdiction secure, we may now move to the officers' argument that they are entitled to qualified immunity. As they did in the district court, the officers rely almost exclusively on the Supreme Court's decision in *Engquist* and its purported effect on our holding in *Hilton*.

### A

We consider first the question whether the facts Hanes alleged describe a constitutional violation. See *Pearson*, 129 S. Ct. at 815-16, 818. Hanes argues that they do, based on the idea that the Equal Protection Clause protects invidious discrimination against even one person. Under that theory, "the plaintiff alleges that she has been intentionally treated differently from others similarly situated

and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

In *Hilton*, we relied on *Olech* to explain how a class-of-one claim could be made against police officers for unequal enforcement of the law. *Hilton*, 209 F.3d at 1007. The plaintiff there had alleged that throughout a long-running feud with his neighbors, the police were not evenhanded and usually cited or arrested only him. *Id.* at 1006. We recognized a claim under a class-of-one theory for unequal police protection, but held that the plaintiff could not survive summary judgment because he had not shown that the officers' unequal enforcement of the law was motivated by personal animus unrelated to official duties. *Hilton*, 209 F.3d at 1007-08. It is true that some more recent cases have cast doubt on the animus requirement, suggesting that the plaintiff need show only that no rational reason supports the unequal treatment. See *United States v. Moore*, 543 F.3d 891, 898 (7th Cir. 2008) (collecting cases). Because Hanes alleged personal animus, thereby meeting the more onerous standard, we need not resolve the tension identified in *Moore.* Hanes's complaint follows *Hilton* to a "T" (perhaps because the plaintiff's lawyer is the same in both cases), and the officers have never argued that it fails to state a claim under that case.

The officers' central argument is that we should reconsider *Hilton* in light of the Supreme Court's recent holding in *Engquist* that public employers cannot be liable for class-of-one equal protection violations. *Engquist*

undermines *Hilton*, the officers argue, because it holds that the class-of-one theory is poorly suited to government actors who exercise "discretionary authority based on subjective, individualized determinations." *Engquist*, 128 S. Ct. at 2153. The exercise of such discretion may lead to unequal treatment, but the Equal Protection Clause is not violated, the Court explained, "because treating like individuals differently is an accepted consequence of the discretion granted." *Id.* at 2154. Although *Engquist* limited its holding to public employment, *id.* at 2156, the Court illustrated its reasoning with an example from law enforcement: a traffic officer who cannot possibly stop all speeding drivers and has no way to distinguish among them literally treats "unequally" the one driver that she does stop. But that stop does not violate the Equal Protection Clause because discretion is inherent in the act of singling out one driver from the crowd. *Id.*

The Supreme Court's reasoning in *Engquist* sheds light on the reach of its holding. First, the Court emphasized that the judgments unsuited to a class-of-one claim are typically "subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." *Id.* at 2154-55. That describes employment decisions because treating like individuals differently in the employment context is "par for the course." *Id.* at 2155. Second, the Court noted that the constitutional constraints on government are much less onerous when it acts as employer as compared to acting as sovereign. *Id.* at 2151. Finally, the Court recognized that, in the employment context, an uncabined class-of-one theory

risks making a constitutional case out of every decision by a government employer. *Id.* at 2156 (citing *Connick v. Myers*, 461 U.S. 138, 143 (1983)).

The lesson we take from this is that context matters. Our task is to apply the *Engquist* approach to claims that the police have inflicted unequal treatment on a citizen for no reason other than malice. In this setting, we conclude, it is not possible to dismiss a complaint based on broad generalities. Although the police enjoy broad freedom of action, *Hilton*, 209 F.3d at 1007-08, their discretion is much narrower than the discretion given public employers. First, in contrast to an employer, who is entitled to make decisions based on factors that may be difficult to articulate and quantify, an officer must justify her decision to stop a suspect by pointing to "articulable facts." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). And while employment decisions are inherently subjective, "[s]ubjective intentions play no role" in evaluating police seizures under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 813 (1996). Second, police officers, in contrast to public employers, exercise the government's sovereign power. Accordingly, constitutional constraints on police power are the norm. Finally, although courts are reluctant to subject routine employment decisions to constitutional scrutiny, asking a court to determine whether a police officer's act was constitutional is not at all unprecedented. For all these reasons, *Engquist* does not support the officers' argument that malicious police conduct is off-limits from class-of-one claims.

In addition to their direct argument based on *Engquist*, the officers point to two circuit court decisions in support of their position. First, the Eighth Circuit has held that a class-of-one claim cannot be made against police based on their decisions about whom and how to investigate, because of the discretion inherent in those decisions. *Flowers v. City of Minneapolis*, 558 F.3d 794, 799-800 (8th Cir. 2009). But the Eighth Circuit's one-paragraph discussion of the issue did not consider the objective constraints on police discretion, see, *e.g.*, *Whren*, 517 U.S. at 806. Instead, it merely made the general observation that officers' "decisions regarding whom to investigate and how to investigate are matters that necessarily involve discretion." *Flowers*, 558 F.3d at 799. Not all discretion is absolute, however, and we are concerned here with the constitutional limits on official authority.

The officers also rely on our application of *Engquist* to prosecutorial discretion in *Moore*, where we explained that "the discretion conferred on prosecutors in choosing whom and how to prosecute is flatly inconsistent with a presumption of uniform treatment." *Moore*, 543 F.3d at 901. *Moore* simply honors the rule that prosecutorial conduct is absolutely immune from civil liability because prosecutors need unfettered discretion. *Imbler v. Pachtman*, 424 U.S. 409, 426 (1976). By contrast, police officers are protected only by qualified immunity because they have "less complex discretionary responsibilities." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).

*Engquist* does show that some discretionary police decision-making is off-limits from class-of-one claims. One

example comes from the Supreme Court's own opinion, which discusses the traffic cop who has no way to distinguish among many speeding drivers. *Engquist*, 128 S. Ct. at 2156. But the officer who repeatedly arrests someone solely because of malice does have a way to distinguish between the citizen repeatedly arrested and the citizen left alone: the officer hates the arrestee. The officer motivated by malice alone is not exercising discretion and is not weighing the factors relevant to the officer's duties to the public. We conclude, therefore, that *Engquist* does not undermine *Hilton* and that Hanes has satisfied the first element of the qualified-immunity analysis: he has stated a claim under a class-of-one theory.

B

We must therefore reach the officers' alternative argument, which is that even if we do not revisit *Hilton*, they are entitled to qualified immunity because the right to police protection uncorrupted by personal animus was not clearly established at the time of the alleged conduct. In support of that point, they note again that there has been some indecision in this circuit over whether there is an animus requirement. See *Moore*, 543 F.3d at 898. But under any view we have taken, arrests motivated by personal animus are unconstitutional. Second, the officers argue that the right announced in *Hilton* is dicta. *Hilton* states, "If the police decided to withdraw all protection from Hilton out of sheer malice, or because they had been bribed by his neighbors, he would state a claim under *Olech*." *Hilton*, 209 F.3d at 1007.

Although we described that statement as dicta in a later case, see *Lunini v. Grayeb*, 395 F.3d 761, 772 (7th Cir. 2005), even dicta may clearly establish a right, see *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). When a court holds that certain conduct violates a constitutional right but that the right was not clearly established, the constitutional ruling is arguably dicta, see *Pearson*, 129 S. Ct. at 818, but it still may clearly establish the law for future conduct, *id.* at 819. As Judge Calabresi has explained, "lucid and unambiguous dicta concerning the existence of a constitutional right can without more make that right 'clearly established' for purposes of a qualified immunity analysis." *Wilkinson v. Russell*, 182 F.3d 89, 112 (2d Cir. 1999) (Calabresi, J., concurring). *Hilton*'s statement could not be more lucid and unambiguous. Since the conduct alleged here is almost identical to the requirements set out in *Hilton*, a reasonable officer was on notice that such conduct violates the constitution.

The officers' remaining arguments that the right was not clearly established rest on other cases on which they might have relied, but none of those decisions affects the clarity of the law established in *Hilton*. First, the officers point to *Whren v. United States*, 517 U.S. 806 (1996), and *DeShaney v. Winnebago County Dept. of Soc. Serv.*, 489 U.S. 189 (1989). Neither of those cases, however, concerned the Equal Protection Clause. In fact, the opinion in each one contains language in support of an equal-protection challenge to unequal enforcement of the law. *Whren*, 517 U.S. at 813 ("[T]he constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment.");

*DeShaney*, 489 U.S. at 197 n.3 ("The State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause."). Finally, the officers contend that even if *Engquist* did not implicitly overrule *Hilton,* it unsettled the law established in *Hilton*. (At the time they acted, these officers could not have been relying on *Engquist* in any event; the Supreme Court did not hand down the decision until June, 2008, one month after Hanes filed his complaint.) For the reasons we have already given, we do not agree that it had this effect outside the context of areas that are almost entirely discretionary.

We therefore AFFIRM the judgment of the district court.