08-6297-cv
Analytical Diagnostics v. Kusel

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2009

(Argued: June 14, 2010                    Decided: October 4, 2010)

Docket No. 08-6297-cv

_____

ANALYTICAL DIAGNOSTIC LABS, INC.,

*Plaintiff-Appellant,*

v.

BETTY KUSEL, RICHARD F. DAINES, M.D., WENDY E. SAUNDERS, RICHARD W.
JENNY, Ph.D., STEPHANIE H. SHULMAN, M.S., DEIRDRE ASTIN,

*Defendants-Appellees.*

.

_____

Before: CALABRESI, POOLER, and CHIN, *Circuit Judges*.

Appeal from the September 11, 2008, memorandum decision and order of the United

States District Court for the Eastern District of New York (Brian Cogan, *J.*) granting defendants

summary judgment. The district court held that *Engquist v. Oregon Dep't of Agriculture*, 553

U.S. 591 (2008), barred all class-of-one claims based on discretionary state actions. We disagree

and hold *Engquist* does not bar the claims at issue here. We also reverse the district court's

finding that the record contained sufficient admissible evidence to raise a question of material

fact. We therefore affirm the grant of summary judgment to defendants, albeit on different

grounds than below.

Affirmed.

_____

DAVID JAROSLAWICZ, Jaroslawicz & Jaros, LLC, New York, NY,
*for Defendant-Appellant Analytical Diagnostic Labs, Inc.*.


RICHARD DEARING, Assistant Solicitor General (Barbara D.
Underwood, Solicitor General, Benjamin N. Gutman, Deputy Solicitor
General, Andrew M. Cuomo, Attorney General of the State of New York,
*on the brief*), New York, NY for *Defendants-Appellees Betty Kusel,
Richard F. Daines, M.D., Wendy E. Saunders, Richard W. Jenny, Ph.D.,
Stephanie H. Shulman, M.S., and Diedre Astin*.

POOLER, *Circuit Judge*:

This case presents a class-of-one equal protection claim by plaintiff Analytical Diagnostic Labs, Inc. ("ADL"). ADL alleges that defendants - employees of the New York State Department of Health ("DOH") - intentionally and maliciously subjected ADL to an intense and unwarranted degree of regulatory scrutiny. ADL appeals from the September 11, 2008 memorandum decision and order of the United States District Court for the Eastern District of New York (Cogan, *J.*). The district court, relying on the Supreme Court's decision in *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591 (2008), found ADL's claims barred because ADL could not show the alleged differential treatment resulted from non-discretionary state action. We find the district court's reading of *Engquist* overbroad and reverse that part of the opinion. We also disagree with the district court's conclusion that ADL presented sufficient evidence to demonstrate it was treated differently from other similarly situated entities. We therefore affirm the grant of summary judgment, albeit on different grounds.

**BACKGROUND**

ADL is a privately owned clinical testing laboratory that serves nursing homes and similar facilities in the New York City area. It is regulated by DOH, and New York state law requires that all clinical laboratories obtain permits annually to continue operating. N.Y. Pub. Health §§ 574-75. Permits are issued only upon a DOH finding that the laboratory is "competently staffed and properly equipped, and will be operated in the manner" required by law. N.Y. Pub. Health § 575(2). Permits cannot issue until "the laboratory has been inspected and has corrected any deficiencies found." 10 N.Y. Comp. Codes R. & Regs. § 58-1.1(a)(2). In addition, a lab may hold a permit to perform a given category of testing only if the laboratory director holds a certificate of qualification ("CQ") in that category of testing. N.Y. Pub. Health §§ 572, 575(2). CQs are granted for initial terms of two years, and may be renwed for subsequent two-year terms.

ADL began operating approximately 20 years ago, and until 2000, ADL passed its DOH inspections without major deficiencies being noted. In July 2000, the DOH began conducting far more frequent surveys of ADL, as often as every six months, which DOH asserted was necessary because of the number of deficiencies found at the laboratory and ADL's failure to implement a plan of correction.

In late 2003, DOH began investigating allegations that ADL was illegally performing forensic toxicology. ADL did perform some toxicology testing for at least one of its clients, but its laboratory reports clearly stated that specimen analysis was performed without any chain-of-custody handling, and thus test results were not to be used for legal or evaluation purposes. ADL alleges other laboratories, including Quest Diagnostics and LabCorp, used nearly identical

3

disclaimers on similar toxicology testing. DOH brought charges against ADL for improper forensic testing in 2005. Those charges were settled, with ADL admitting no wrongdoing but paying a $3,000 civil penalty.

DOH's in-depth scrutiny of ADL continued from 2004 through 2007. Defendant Betty Kusel, director of regulatory affairs at DOH, scheduled numerous surveys and investigations of ADL. Kusel deliberately scheduled at least two of these investigations to fall on Jewish holidays, when she knew ADL's principals, observant Jews, would be out of the office. Kusel told defendant Stephanie Shulman that the absence of ADL's principals would give DOH an opportunity to search for specific paperwork.

On August 2, 2006 – the eve of a Jewish holiday – DOH employees arrived at ADL unannounced and stationed an investigator at a side entrance with a video camera, "in hopes of capturing any fleeing personnel." DOH investigators also questioned Pakistani-born ADL employees about their citizenship and immigration status, and whether their families were legally in the United States.

During the same time period, DOH refused to renew ADL's operating permit, instead issuing a series of letters under the State Administrative Procedure Act ("SAPA"). These letters functioned in lieu of an operating permit. ADL's lab directors also began experiencing problems with renewals of their CQs.

In August, 2004, Dr. Kumaranayagam Balakrishnan, ADL's longtime lab director, submitted a renewal application for his CQ. Kusel advised him that his CQ renewal was being delayed because of the ongoing forensic investigation. In March 2006, DOH threatened to charge Dr. Balakrishnan personally for illegal forensic testing, even though ADL already had

4

settled those charges. Dr. Balakrishnan resigned from ADL in April 2006. Even after his resignation, he faced trouble renewing his CQ. An August 22, 2006 email from Kusel to a DOH staffer stated that Dr. Balakrishnan had two choices: "admit to not fulfilling duties as a director because he is incompetent or unwilling to comply . . . [or] he can fall on our mercies that the owners of ADL did not allow him to fulfill his duties - at which point we may be willing to show some leniency." On December 4, 2006, Kusel emailed another DOH staffer, stating that she would be willing to "settle the old charges and issue a CQ that would be very close to expiring . . . it would be more of a nice surprise when he's included in the ADL charges."

After Dr. Balakrishnan's departure, ADL experienced significant trouble hiring and retaining a lab director. Drs. George Abraham and Matthew Pincus began working there in May and June 2006, respectively. The doctors prepared and submitted a plan of correction to the DOH. After a conversation with defendant Dr. Richard W. Jenny in which Dr. Jenny threatened that any failure to correct the laboratory's problems could negatively impact Dr. Pincus' CQ, Dr. Pincus resigned as laboratory director in August 2006.

ADL then hired Dr. Ming Liu to serve as an assistant laboratory director to Dr. Abraham. Shortly after, defendant Diedre Astin sent Dr. Liu a letter questioning whether he could devote the necessary time to ADL, given that he already held other positions at other facilities. In that same letter, Astin told Dr. Liu that DOH would not approve any director at ADL unless that director could be on the premises of the laboratory for at least 50 percent of its operating hours because of the laboratory's "significant compliance issues." As Dr. Abraham did not hold a CQ in various testing categories, DOH voided ADL's operating permit and directed ADL to cease testing in those categories. On September 28, 2006, Dr. Liu resigned.

On the same day as Dr. Liu's resignation, a DOH supervisor visited ADL and found the laboratory had corrected all prior deficiencies and found no significant new problems. DOH never conveyed the results of the surveyor's visit to ADL.

ADL then hired Dr. Lilia Mesia as its laboratory director and Dr. Henry Gang as assistant director in October 2006. Because Dr. Mesia possessed the required CQ's, DOH issued a SAPA letter authorizing ADL to resume testing in all areas except one, since Dr. Abraham indicated the laboratory was not ready to resume testing in that area. In January 2007, Dr. Mesia moved out of state, so ADL hired Dr. Joel Lincoln as director. In September 2007, Dr. Lincoln accepted other employment, and wanted to remain at ADL to ease the new director's transition. Kusel called Dr. Lincoln on Rosh Hashanah to discuss his responsibilities and obligations as ADL's director and told Dr. Lincoln his own CQ could be in jeopardy if he remained and ADL failed to meet compliance standards. Dr. Lincoln resigned from ADL on September 13, 2007. On September 14, 2007, DOH again voided ADL's operating permit in the areas in which Dr. Lincoln had been the only CQ holder and directed plaintiff to cease testing in those areas. ADL then hired Dr. A. Baqui to serve as director, and DOH again granted ADL provisional authority to test in the voided areas.

### *The district court's decision*

The district court began its summary judgment analysis by stating the test for an equal protection class-of-one claim, namely that (1) plaintiff was treated differently than a similarly situated entity; and (2) defendants treated plaintiff differently with no rational basis. *Analytical Diagnostic Labs, Inc. v. Kusel, et al*, No. 07 Civ. 3908, 2008 WL 4222042 (E.D.N.Y. Sept. 11, 2008). Relying on the Supreme Court's decision in *Engquist v. Oregon Dep't of Agriculture*,

6

535 U.S. 591 (2008), the district court found plaintiffs must also satisfy a third requirement: that

the differential treatment resulted from non-discretionary state action. *Kusel*, 2008 WL 4222042,

at *3. Applying these standards, the district court determined that ADL raised genuine issues of

material fact on the first two requirements, differential treatment and malice; but not on the third,

finding:

> The differential treatment plaintiff allegedly received resulted from
> defendants' investigation of complaints regarding ADL and the
> decisions of DOH employees on whether or not to issue CQs and
> permits to the laboratory and its employees. These are clearly
> discretionary state activities, as DOH is entrusted with making
> licensing decisions after subjectively reviewing each individual
> laboratory's qualifications, the qualifications of its directors and
> potential directors, and any complaints and investigation results
> regarding the laboratory. This is a matter requiring the exercise of
> discretion, not the performance of a duty required by law.

*Id.* at *4 (citation omitted). The district court concluded:

> Regardless of the other serious factual issues raised by plaintiff as
> to the different treatment and defendants' motivations, the
> undisputed fact remains that DOH officials possess discretion to
> subjectively evaluate laboratories and make licensing decisions,
> and any differential treatment of ADL stemmed from these
> discretionary activities. As the *Engquist* Court noted, a plaintiff
> cannot raise a federal constitutional challenge to a necessarily
> subjective and individualized decision made by state officials.

*Id.* at *5 (citations omitted). The district court then declined to exercise supplemental

jurisdiction over ADL's state law claims and dismissed the complaint in its entirety. This appeal

followed.

**DISCUSSION**

We review a district court's grant of summary judgment de novo. *Kaytor v. Electric Boat

Co.*, 609 F.3d 537, 546 (2d Cir. 2010). To prevail on a summary judgment motion, the moving

7

party must demonstrate that there is no genuine issue of material fact to be tried and that the

undisputed facts warrant summary judgment as a matter of law. *Id.* at 545.

A class-of-one claim exists "where the plaintiff alleges that she has been intentionally

treated differently from others similarly situated and that there is no rational basis for the

difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). We have

held that to succeed on a class-of-one claim, a plaintiff must establish that:

> (i) no rational person could regard the circumstances of the plaintiff
> to differ from those of a comparator to a degree that would justify
> the differential treatment on the basis of a legitimate government
> policy; and (ii) the similarity in circumstances and difference in
> treatment are sufficient to exclude the possibility that the
> defendants acted on the basis of a mistake.

*Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *abrogated on other grounds*, *Appel v.*

*Spiridon*, 531 F.3d 138 (2d Cir. 2008).[1]

The Supreme Court's decision in *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591

(2008) eliminated class-of-one claims for government employees. In essence, *Engquist* is a

jurisdiction-limiting decision. *Engquist* involves a former state employee laid off during an

agency reorganization. She sued, alleging she was fired for arbitrary and malicious reasons.

*Engquist*, 531 U.S. at 595. Engquist sought to bring a class-of-one claim, arguing that the

Constitution applies to the state in its role as employer, as well as in its role as regulator.

The *Engquist* court examined *Olech*, in which the plaintiff property owner had asked the

---

[1] As noted in *Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008), *Engquist* overruled *Neilsen* insofar as *Neilsen* involved a public employee asserting a class-of-one equal protection claim. The remainder of *Neilsen's* holdings, including its articulation of the elements of a class-of-one claim equal protection claim, remain intact.

village to connect her property to the municipal water supply. The village had required others seeking access to provide only a 15-foot easement, but asked Olech to provide a 33-foot easement. She sued, alleging the requirement of an easement 18 feet longer than the norm violated the Equal Protection Clause. The *Olech* court held that she stated a valid class-of-one claim under the Equal Protection Clause because she had "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." 528 U.S. at 564. The *Engquist* court concluded that *Olech* turned on "the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed." 528 U.S. at 601. It continued:

> There was no indication in *Olech* that the zoning board was exercising discretionary authority based on subjective, individualized determinations - at least not with regard to easement length, however typical such determinations may be as a general zoning matter. Rather, the complaint alleged that the board consistently required only a 15-foot easement, but subjected Olech to a 33-foot easement. This differential treatment raised a concern of arbitrary classification, and we therefore required that the State provide a rational basis for it.

*Id.* at 602-03 (citation omitted). Conversely, the *Enquist* court found that some types of state action inherently "involve discretionary decisionmaking based on a vast array of subjective, individualized assessment." *Id.* at 603. Such state action does not violate the Equal Protection Clause "when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted." *Id.* The court found "[t]his principle applies most clearly in the employment context, for employment decisions are quite often subjective and individualized" and dismissed Engquist's claim. *Id.* at 604. The opinion noted that the Court's holding was limited to finding "that the class-of-one theory of equal

9

protection has no application in the public employment context - and that is all we decide . . . ."

*Id.* at 607.

Our Court has yet to address whether *Engquist's* prohibition is limited to the public employment context, or whether it extends to other types of discretionary government behavior. Several district courts in this Circuit have extended *Enquist*'s holding to require that plaintiffs seeking to establish a class-of-one claim must show the difference in treatment flowed from non-discretionary action, but they have done so without persuasive analysis. *See, e.g.*, *Dunlea v. Federal Bureau of Prisons*, No. 3:10-cv-214, 2010 WL 1727838, at *3-4 (D. Conn. April 26, 2010) (dismissing class-of-one claim for prisoner denied use of prison email system); *Tarantino v. City of Hornell*, 615 F. Supp. 2d 102, 116-17 (W.D.N.Y. 2009) (dismissing class-of-one claim challenging discretionary decision to enforce city codes). Conversely, in *Alfaro v. Labrador*, the Eastern District of New York rejected other courts' findings that a class-of-one claim never can be brought in a law enforcement context. No. 06-CV-1470, 2009 WL 2525128, at *8-11 (E.D.N.Y. Aug. 14, 2009). Rather, Judge Seybert read *Engquist* and *Olech* to define "discretionary decisions, for the purpose of barring class-of-one claims, as those that involve discretion that is actually exercised on a day-to-day basis, rather than decisions that are theoretically discretionary but - as a practical matter- actually depend on de facto standards." *Id.* at *9. She allowed Alfaro's claim that he was unconstitutionally singled out for zoning violations to go forward.

Our sister Circuits are equally split. In a nonbinding decision, the Sixth Circuit held that *Engquist* likely was limited to the public employment context and probably did not control in a class-of-one claim in a denial of parole case. *Franks v. Rubintschun*, 312 F. App'x 764, 766 n. 3

10

(6th Cir. 2009). Conversely, the Eleventh Circuit extended *Engquist* to claims by government contractors, finding that "[j]ust as in the employee context, and in the absence of a restricting contract or statute, decisions involving government contractors require broad discretion that may rest 'on a wide array of factors that are difficult to articulate and quantify.'" *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1274 (11th Cir. 2008) (citation omitted). Similarly, the Eighth Circuit found a police officer's investigative decisions could not be challenged with a class-of-one equal protection claim because such decisions are inherently discretionary. *Flowers v. City of Minneapolis*, 558 F.3d 794, 799-800 (8th Cir. 2009).

The Seventh Circuit issued several decisions expanding *Engquist* beyond public employment. *See Srail v. Village of Lisle*, 588 F.3d 940, 944-45 (7th Cir. 2009) (applying *Engquist* to a municipality's "subjective and individualized assessment" to extend municipal water to some communities but not others); *United States v. Moore*, 543 F.3d 891, 901 (7th Cir. 2008) (applying *Engquist* to bar class-of-one claims challenging prosecutorial decisions). However, in *Hanes v. Zurick*. the Seventh Circuit declined to apply *Engquist* to bar a class-of-one claim alleging that the police defendants repeatedly arrested plaintiff without cause. 578 F.3d 491, 495-96 (2009).

The *Hanes* court looked at the reasons underlying the *Engquist* decision:

> First, the Court emphasized that the judgments unsuited to a class-of-one claim are typically "subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." That describes employment decisions because treating like individuals differently in the employment context is "par for the course." Second, the Court noted that the constitutional constraints on government are much less onerous when it acts as employer as compared to acting as sovereign. Finally, the Court recognized that, in the employment context, an uncabined class-of-one theory risks making a constitutional case out of every

11

decision by a government employer.

*Id.* at 495 (citations omitted). However, the *Hanes* court concluded, that does not mean every class-of-one claim involving any discretionary state action is barred. *Id.* at 495-96. Indeed, the *Hanes* court held *Engquist* did not bar plaintiff's claim because not all discretionary activity is "off-limits from class-of-one claims." *Id.* at 495.

We join the Seventh Circuit in holding that *Engquist* does not bar all class-of-one claims involving discretionary state action. While there may be some circumstances where *Engquist* is properly applied outside of the employment context, the case before us is not one of them. Critically, the state defendants here exercised the state's regulatory power. As the *Engquist* court ecognized, there is a:

> crucial difference, with respect to constitutional analysis, between the government exercising the power to regulate or license, as lawmaker, and the government acting as proprietor, to manage its internal operations.

*Engquist*, 553 U.S. at 598 (citations, quotations and brackets omitted). The "government has significantly greater leeway in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large." *Id.*

Moreover, DOH does not possess unfettered discretion in deciding whether to revoke, suspend or otherwise limit an existing license. N.Y. Pub. Health § 577(3). DOH cannot revoke existing licenses without a hearing. *Daxor Corp. v. State Dept. of Health*, 90 N.Y.2d 89, 98 (1997). The hearing's outcome could further be challenged in an Article 78 proceeding. N.Y. C.P.L.R. § 7801 et seq. DOH must operate within the regulatory framework set forth in the New York's Public Health Law, and the actions of its officials are reviewed under a qualified

12

immunity standard, not an absolute immunity standard. *See, e.g.*, *Blue v. Koren*, 72 F.3d 1075, 1083 (2d Cir. 1995). As aptly noted by the *Hanes* court, "the officer who repeatedly arrests someone solely because of malice does have a way to distinguish between the citizen repeatedly arrested and the citizen left alone: the officer hates the arrestee." *Hanes*, 578 F.3d at 496. Similarly, here plaintiffs have a way to distinguish themselves and other labs who are allegedly subject to less scrutiny by DOH: defendants maliciously targeted ADL for increased oversight. Especially where the state is exercising its regulatory and licensing power, we are loath to read *Engquist* as broadly as defendants urge.

Having found *Engquist* does not bar ADL's claims, we return to the class-of-one factors set forth in *Neilson*. 409 F.3d at 104. The first factor requires that a plaintiff show that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy." *Id.* In *Giordano v. City of New York*, we required that class-of-one plaintiffs prove "intentional disparate treatment," that is, demonstrate the decisionmakers were aware that there were other similarly-situated individuals who were treated differently. 274 F.3d 740, 751 (2d Cir. 2004).

We find nothing in the record that raises a question of fact as to the alleged disparate treatment. ADL relies on a December 2005 letter from a DOH attorney (who is not a defendant here) on DOH stationary naming two other labs being investigated for the same forensic testing practices as ADL. The letter, however, proves nothing regard regarding the other two laboratories except that DOH had concluded its investigation of each for apparently similar conduct. The letter provides no proof that the other two laboratories were appropriate

13

comparators, as the letter does not disclose their regulatory histories or whether they were similar to ADL in relevant respects. Nor does the record contain any other evidence that the laboratories were similar in relevant respects. Moreover, although ADL now argues on appeal that DOH's decisions were motivated by the religion or ethnicity of ADL's owners, it presented no evidence that the owners of the other two labs were of a different religion or ethnicity. As there is no record evidence raising a question of fact as to whether (1) other labs were similarly situated; or (2) even assuming other labs were similarly situated, that the same decisionmakers were aware of the similarity and treated ADL differently, summary judgment in favor of the defendants is appropriate.

## CONCLUSION

For the reasons given above, we reverse the district court's findings, but affirm the grant of summary judgment, albeit on different grounds.