NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 16, 2014
Decided December 23, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 14-2371

| | |
|---|---|
| BRIAN E. DAVIS, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 2:13-cv-00982-JPS |
| | |
| STEPHEN CHALSTROM, | J. P. Stadtmueller, |
| *Defendant-Appellant*. | *Judge*. |

**O R D E R**

Stephen Chalstrom, a residential code-enforcement inspector, observed the exterior of a building owned by Brian Davis on seven occasions between August 2012 and October 2013. During his visits to the home, Chalstrom used a walkway to approach the front door, where he saw numerous housing code violations. Chalstrom also used a walkway along the side of the house to reach the back of the house, where he noted additional housing code violations. Davis sued Chalstrom under 42 U.S.C. § 1983, seeking damages on the theory, among others, that Chalstrom violated his Fourth Amendment rights by inspecting the building's exterior without a warrant. Davis and Chalstrom cross-moved for summary judgment, and the district judge denied both motions. Chalstrom has taken an interlocutory appeal, contending that he deserves

qualified immunity. Because the district court denied summary judgment based on a fact dispute, we do not have jurisdiction over the appeal and must dismiss.

Davis has sued three defendants on numerous grounds, including claims that the defendants unlawfully inspected his building and maliciously cited him for code violations. We set forth the facts relevant only to the one claim raised in this appeal: that, by inspecting the exterior of Davis's three-bedroom building at 3616 North 61st Street without a warrant, Chalstrom violated the Fourth Amendment.

At the time of the inspections, the building was vacant. Davis owned the building but did not live there. Nor did tenants occupy any part of the residence. Chalstrom first inspected the exterior of Davis's building on August 8, 2012. He began by approaching the front door of the home using the walkway connected to the public sidewalk. He knocked on the front door and, receiving no response, left a "right-of-entry" order. The order stated that, because the home had been vacant for at least 30 days, under Milwaukee ordinance Davis had to register the home with the Department of Neighborhood Services and allow an inspector to observe the inside and outside of the home. He then inspected the exterior of the home as seen from the front door and from a second walkway that ran from the public sidewalk along the side of the home to the backyard. Next he left the property and entered the shared alley in the rear to examine the garage. From these observations, Chalstrom saw numerous housing code violations, including unpainted wooden surfaces, rotted wood on the porch guardrail, broken wooden fencing, missing handrails, obstructed and faulty gutters, and a missing window pain.

Chalstrom returned to the property 6 times during the next 14 months. He needed to verify vacancy, to attempt a reinspection under the right-of-entry order, to refresh his memory of the code violations for a Municipal Court proceeding, and to confirm that the house remained secured. Each time, Chalstrom used the two walkways that were connected to the public sidewalk to inspect the exterior of the home. He never passed through any gate or fence to access the property, but he may have stepped on the lawn.

Davis described his attempts to restrict access to this property. At the time of the inspections, he had posted in the front window of the home a "no trespassing" sign. He further asserts that wooden fences bounded the sides of the property and a fence with a gate, situated between the backyard and the alley, enclosed the rear.

The record contains visual depictions of the property. Davis submitted a diagram showing that the walkway on the side of the house was 18 inches from the exterior wall

of the home. The parties also furnished photographs of the outside of the home as viewed from the public sidewalk and reflecting the various code violations reported by Chalstrom. The photographs are consistent with the parties' descriptions of the property except that they show that one of the side-border fences belongs to the neighboring house.

The parties cross-moved for summary judgment on all claims, and Chalstrom raised a qualified-immunity defense. Davis argued that the area where Chalstrom walked was the curtilage of his home and that he had violated the Fourth Amendment by invading the curtilage without a warrant. Chalstrom responded that a reasonable building code inspector would not know that inspecting the exterior of an unoccupied rental building without a warrant from publicly accessible areas violates clearly established Fourth Amendment rights.

The district court denied both motions for summary judgment, identifying a fact dispute. In its order, the district court analyzed only Davis's Fourth Amendment claim against Chalstrom and did not mention qualified immunity. It concluded that "the record in this case is not sufficiently well-developed with regard to the four factors to be considered in determining whether an area constitutes the curtilage of a home." The court cited to *United States v. Dunn*, 480 U.S. 294, 301–03 (1987), which describes the four factors relevant to assessing whether an area is curtilage: the proximity of the contested area to the home, whether the area is enclosed, the intended use of the area, and the steps taken to prevent the public from seeing it. The trial, which was set to begin two weeks later, was postponed after Chalstrom filed this interlocutory appeal.

The first issue that we must address is appellate jurisdiction. Relying on *Hanes v. Zurick*, 578 F.3d 491 (7th Cir. 2009), Chalstrom argues that this court has jurisdiction because the district court must have impliedly denied Chalstrom's qualified-immunity defense when it denied his motion for summary judgment. He adds that, as was true of the appellant in *Hanes*, he raised and briefed the qualified-immunity defense in the district court, no factual determinations are outstanding, and the district court did not specifically reserve ruling on the defense.

Ordinarily, for an appellate court to have jurisdiction over the appeal of a district court's denial of summary judgment, the district court must expressly rule on the defense of qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 526–27 (1985); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978); *Leaf v. Shelnutt*, 400 F.3d 1070, 1078 (7th Cir. 2005); *Gosnell v. City of Troy, Ill.*, 979 F.2d 1257, 1260–61 (7th Cir. 1992). We have refused to allow a defendant to appeal the denial of summary judgment when the district court

has not expressly ruled on the merits of the qualified immunity defense. *See Gosnell*, 979 F.2d at 1261. Moreover, when the order is ambiguous, *Gosnell* instructs that the proper course of action is for the defendant to move the district court to reconsider or clarify, which Chalstrom could have done but did not. *See id.*

It is true that under *Hanes* there is an exception to the express-ruling requirement when the district court impliedly rejected the defense, but the exception does not apply here. When the defendants in *Hanes* raised qualified immunity, they told the court that, if it decided to rely on a particular precedent, "it should reject their qualified immunity defense as well." *Hanes*, 578 F.3d at 492. The district court's ruling did not mention qualified immunity, but it did follow the precedent mentioned by the defendants. So we readily concluded that the ruling "necessarily included a denial of the defense of qualified immunity." *Id*. at 493. But the Supreme Court has warned that "a defendant entitled to invoke a qualified-immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record set forth a 'genuine' issue of material fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995). In contrast to *Hanes*, that is exactly what the district court did in this case because it ruled that a trial is needed to resolve the four fact questions that underlie whether an area is curtilage.

The usual disposition of an interlocutory appeal in a case that, as here, involves a qualified-immunity defense but where the appealed order identifies only a fact dispute is dismissal of the appeal for lack of jurisdiction. *See Gutierrez v. Kermon*, 722 F.3d 1003, 1009 (7th Cir. 2013) (dismissing interlocutory appeal because appellate court can only consider abstract legal questions on appeal from denial of defense of qualified immunity; it may not decide whether district court erred in finding that genuine dispute of material fact existed); *Whitlock v. Brueggemann*, 682 F.3d 567, 573–74 (7th Cir. 2012) (dismissing portion of interlocutory appeal because appeal of qualified-immunity ruling that turns on insufficiency of the evidence is not permitted); *Leaf*, 400 F.3d at 1078 (noting that appellate court cannot "make conclusions about which facts the parties ultimately might be able to establish at trial" on appeal from denial of summary judgment); *Koch v. Rugg*, 221 F.3d 1283, 1296–98 (11th Cir. 2000). We follow that approach here and dismiss this appeal.

On remand, we expect the district court to take up the issue of qualified immunity, which Chalstrom has preserved. One approach the court may wish to consider, as it would obviate the need for a trial on the issue of curtilage, is to assume that Chalstrom walked on the curtilage of Davis's property. Then the purely legal

question for the court would be simply whether Chastrom walked on Davis's curtilage in a way that violated clearly established law.

We leave it for the district court to decide that qualified-immunity question in the first instance. But we make two observations. First, for Davis to prevail, he must point to case law clearly establishing that a reasonable inspector would have known that a mere visual inspection of the outside of a structure, even if done while on the curtilage and without a warrant, is an unreasonable search. *See Gibbs v. Lomas*, 755 F.3d 529, 540–41 (7th Cir. 2014); *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 723–24 (7th Cir. 2013).

Second, although the curtilage of a home is a space granted some constitutional protection, s*ee Florida v. Jardines*, 133 S. Ct. 1409, 1414–15 (2013); *Dunn*, 480 U.S. at 300–01; *United States v. French*, 291 F.3d 945, 951 (7th Cir. 2002), that even a non-resident owner may enjoy, s*ee United States v. Pitts*, 322 F.3d 449, 455–56 (7th Cir. 2003); *United States v. Harrison*, 689 F.3d 301, 307–09 (3d Cir. 2012), the protection is limited. Many cases state that a government agent is permitted to enter the curtilage of the home in the same way that any delivery person or passerby could: the agent may approach any entrance to the house that is open to visitors (even if it is not the front door) and make warrantless observations of the exterior. *See Carroll v. Carman*, 125 S. Ct. 348, 351–52 (2014); *United States v. LePage*, 477 F.3d 485, 488 (7th Cir. 2007); *French*, 291 F.3d at 952–53; *Nikolas v. City of Omaha*, 605 F.3d 539, 545–46 (8th Cir. 2010); *Widgren v. Maple Grove Twp.*, 429 F.3d 575, 580 (6th Cir. 2005); *United States v. Hatfield*, 333 F.3d 1189, 1194 (10th Cir. 2003). This is an application of the general principle that the areas that a person willingly exposes to the public, like the exterior of a home, do not enjoy the benefit of Fourth Amendment protection. *See Dunn*, 480 U.S. at 304–05; *United States v. Hedrick*, 922 F.2d 396, 399 (7th Cir. 1991); *United States v. Hayes*, 551 F.3d 138, 145 (2d Cir. 2008).

One final note. Davis moved this court to impose sanctions (presumably in the form of damages) against Chalstrom for filing a frivolous appeal. S*ee* FED. R. APP. P. 38. Rule 38 allows this court to award sanctions if it determines that "the result is foreordained by the lack of substance to the appellant's arguments." *Indep. Lift Truck Builders Union v. NACCO Materials Handling Grp., Inc.*, 202 F.3d 965, 969 (7th Cir. 2000) (quoting *Mars Steel Corp. v. Cont'l Bank*, 880 F.2d 928, 938 (7th Cir. 1989) (en banc)). Although we are dismissing the appeal, Chalstrom's arguments were not lacking in substance, so we deny Davis's motion.

DISMISSED.