**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 13, 2016[*]
Decided May 17, 2016

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 15-2978

| | |
|---|---|
| BRIAN E. DAVIS, <br> *Plaintiff-Appellant*, | Appeal from the United States District <br> Court for the Eastern District of Wisconsin. |
| *v.* | No. 13-CV-982-JPS |
| CITY OF MILWAUKEE, et al., <br> *Defendants-Appellees*. | J.P. Stadtmueller, <br> *Judge*. |

**O R D E R**

Stephen Chalstrom, a residential code-enforcement inspector, inspected the exterior of a vacant building owned by Brian Davis seven times between August 2012 and October 2013. During his visits to the structure, Chalstrom used walkways on the property, where he saw numerous housing-code violations. Davis sued Chalstrom (and other people, but they are not relevant on appeal) under 42 U.S.C. § 1983 for damages. He invoked the theory, among others, that Chalstrom violated his Fourth Amendment

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

rights by inspecting the building's exterior without a warrant. The district court ruled that Chalstrom is entitled to qualified immunity. That ruling is correct, so we affirm.

At the time of the inspections, the building was vacant and in foreclosure proceedings. Davis owned the building but never lived there. No tenants occupied or rented the residence. And Davis had not paid his mortgage on this property since May 2011, so his lender had started foreclosure proceedings in late 2012. On August 8, shortly before those proceedings started, Chalstrom first inspected the exterior of Davis's property. He approached the front door using the walkway connected to the public sidewalk. He knocked and, receiving no response, left a message. The message said that, because the home had been vacant for at least 30 days, under a Milwaukee ordinance Davis had to allow an inspector to observe the inside and outside of the home. He then inspected the exterior of the home as seen from the front door and from a second walkway that ran from the public sidewalk along the side of the home to the backyard. Next he left the property and entered the alley in the rear to examine the garage. From these observations, Chalstrom saw numerous housing code violations, including unpainted wooden surfaces, rotted wood on the porch guardrail, broken wooden fencing, missing handrails, obstructed and faulty gutters, and a missing window pane.

Chalstrom returned to the property six times during the next 14 months for several reasons. He needed to verify vacancy, to attempt reinspection, to refresh his memory of the code violations for a Municipal Court proceeding, and to confirm that the house remained secured. Each time, Chalstrom used the two walkways that were connected to the public sidewalk. He never passed through any gate or fence that bounded the parts of sides of the property, or entered the home itself—the front window bore a "no trespassing" sign. He likely stepped on the front and back lawns. The record contains photos of the property and code violations. Here is one of the house:



Proceedings in the district court were protracted after the parties cross-moved for summary judgment. Davis argued that the area where Chalstrom walked was the "curtilage" of his home and that he violated the Fourth Amendment by invading the curtilage without a warrant. Chalstrom responded that a reasonable building-code inspector would not know that a warrantless inspection of the exterior of an unoccupied rental building from publicly accessible areas violates clearly established federal law. The district court denied both motions, citing a fact dispute without mentioning qualified immunity. Chalstrom then filed an interlocutory appeal, which we dismissed for lack of jurisdiction. *See Davis v. Chalstrom*, 595 F. App'x 627 (7th Cir. 2014). At our suggestion, the district court ordered the parties to submit additional briefing regarding qualified immunity. The court then granted the defendants' motion for summary judgment concluding, among other things, that Chalstrom is entitled to qualified immunity.

In this court Davis principally challenges the district court's conclusion that Chalstrom is protected by qualified immunity. He argues that a reasonable inspector in Chalstrom's position would have known that walking around an open lot to inspect the outside of a house was an unlawful invasion of protected curtilage.

The curtilage of a home receives some Fourth Amendment protection. Curtilage is the space that surrounds a home and that the home's residents may reasonably expect to "be treated as the home itself." *United States v. Dunn*, 480 U.S. 294, 300 (1987). It harbors the "intimate activity associated with the sanctity of a [person's] home and the privacies of life." *Oliver v. United States*, 466 U.S. 170, 180 (1984) (quoting *Boyd v. United States*, 116 U.S. 616, 630 (1886)); *see Florida v. Jardines*, 133 S. Ct. 1409, 1414–15 (2013); *California v. Ciraolo*, 476 U.S. 207, 213 (1986). The front porch of a home is part of its residents' curtilage, *see Jardines*, 133 S. Ct. at 1415, and the backyard may also be curtilage in certain circumstances, *see Dunn*, 480 U.S. at 301. Curtilage is distinct from "open fields": any "unoccupied or undeveloped area" that "do[es] not provide the setting for those intimate activities that the [Fourth] Amendment is intended to shelter from government interference or surveillance." *See Oliver*, 466 U.S. at 179, 180 n.11.

Curtilage and open fields are treated differently. A warrantless search of a home's interior conducted from its curtilage, such as a dog-sniff from the front porch, violates the Fourth Amendment. *See Jardines*, 133 S. Ct. at 1414–17. But a warrantless entry onto an unoccupied, accessible open field to conduct an outside search, even in the face of a "No Trespassing" sign, does not. *See Oliver,* 466 U.S. at 179-183.

We need not decide whether the areas from which Chalstrom inspected the house's exterior were part of its curtilage. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). To defeat qualified immunity, Davis must identify case law from before the time of the

search that treated the ungated grounds surrounding an *unoccupied* house as curtilage that a government inspector could not enter for purposes of visual inspection. *See City and County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (explaining that government agent "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it" (internal quotation marks omitted)); *Gustafson v. Adkins*, 803 F.3d 883, 891 (7th Cir. 2015). Davis has not identified a single case (nor can we) that applies Fourth Amendment protection to the unenclosed areas surrounding an unoccupied house and prohibits observations of its exterior from those areas. And Davis submitted no evidence that he resided in the house or used it or its yard for any private activities. In fact, he admits that he never lived there, and Chalstrom was inspecting the property precisely because it had been vacant of any residents for more than 30 days. Under these circumstances, Davis is entitled to qualified immunity.

Davis also raises two procedural arguments, but neither is persuasive. First, he argues that the district court erred when it considered an affidavit from Chalstrom. The affidavit states that Chalstrom did not recall seeing the "No Trespassing" sign and that the attached photos accurately reflected the condition of the house in 2012. Davis argues that these statements are false. But the statements were based on Chalstrom's personal knowledge, *see Markel v. Bd. of Regents of the Univ. of Wis. Sys.*, 276 F.3d 906, 912 (7th Cir. 2002), and are not plainly incredible, *see Seshadri v. Kasraian*, 130 F.3d 798, 801–02 (7th Cir. 1997). Although Davis asserts that there was a "No Trespassing" sign in the window, the assertion does not negate Chalstrom's statement that he did not see it. And Davis's statement that Chalstrom's photographs of the house bore a time stamp from 2013 does not mean that Chalstrom lied when he said the photographs also accurately depicted the condition of the house when he first inspected it in 2012. In any case, Chalstrom's statements are irrelevant to the qualified-immunity analysis.

Second, Davis argues that the district court erred when it denied his motion to file a third amended complaint. The amended complaint proposed claims arising from events that occurred after this suit was filed. We review the district court's ruling for abuse of discretion, *see Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 868 (7th Cir. 2013), and conclude that it reasonably denied the request. The district court correctly pointed out that amending the complaint when Davis proposed it—after discovery had closed and the parties had filed dispositive motions—would prolong this protracted case because the amendment would require further discovery. *See, e.g., Campbell v. Ingersoll Milling Mach. Co.*, 893 F.2d 925, 927 (7th Cir. 1990). In any event, Davis's amendment was futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Stayart v. Yahoo! Inc.*, 623 F.3d 436, 439 (7th Cir. 2010). The claims he sought to add—malicious-prosecution claims based on a

municipal proceeding initiated in 2014—are not federal constitutional torts. *See Bontkowski v. Smith*, 305 F.3d 757, 760 (7th Cir. 2002); *Newsome v. McCabe,* 256 F.3d 747, 750-51 (7th Cir. 2001); *Strid v. Converse*, 331 N.W.2d 350 (Wis. 1983). The district court properly declined to exercise jurisdiction over Davis's state-law claims after it dismissed his federal claims. *See Howlett v. Hack*, 794 F.3d 721, 728–29 (7th Cir. 2015).

AFFIRMED.