# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 07-2705

———————

Alfred Flowers,                                            *
                                                          *
                    Appellant,                            *
                                                          *
            v.                                            *
                                                          *    Appeal from the United States
City of Minneapolis, Minnesota; Kevin     *    District Court for the
Stoll, in his individual and official          *    District of Minnesota.
capacities; Sherry Appledorn, in her       *
individual and official capacities; Erika   *
Christensen, in her individual and          *
official capacities; John Does, 1-5,        *
                                                          *
                    Appellees.                            *

———————

Submitted: March 11, 2008
Filed: March 13, 2009

———————

Before BYE, SMITH, and COLLOTON, Circuit Judges.

———————

COLLOTON, Circuit Judge.

Alfred Flowers appeals the district court's[1] adverse grant of summary judgment in favor of Kevin Stoll and the City of Minneapolis on his several civil rights claims

———————

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

against both defendants, as well as his state-law defamation claim against Stoll. We affirm.

I.

We restate the relevant facts as described in a previous qualified-immunity appeal, *Flowers v. City of Minneapolis*, 478 F.3d 869 (8th Cir. 2007), and supplement those facts as necessary for this appeal. Flowers is an African-American resident of Minneapolis, and Stoll is a lieutenant in the Minneapolis Police Department. In the summer of 2003, Flowers began renting a home at 5800 Knox Avenue South in Minneapolis, on the same block where Stoll lived. Neither knew that the other lived on the block until the summer of 2004. In September 2003, however, Flowers was arrested for disorderly conduct and resisting arrest, and later that year, Stoll accessed a computerized report concerning the Flowers arrest. In September 2004, after the events at issue in this lawsuit, Flowers was acquitted of the charges.

On August 1, 2004, Stoll noticed graffiti on two garages in the neighborhood near the home rented by Flowers. This occurred in an area where graffiti was uncommon. Stoll spoke with the police department's graffiti point person, Donna Olson, about the incident, and Olson contacted the unit in charge of organized crime. An investigator from this unit examined the graffiti in the neighborhood and told Stoll that she thought it was graffiti relating to the Gangster Disciples, and that she believed the renter of 5800 Knox, Alfred Flowers, was the uncle of a member of that gang. She also sent Stoll a packet of information on Flowers.

The police gang unit made no further investigation into the matter. But on his own initiative, Stoll contacted the patrol supervisor for his neighborhood and requested a "directed patrol" of 5800 Knox. In a directed patrol, officers are instructed to patrol the area of the target address as time permits. On the same day, during a period when Stoll was the highest ranking officer on duty, he attended roll

call at the precinct with jurisdiction over Flowers's house as well as his own. There, he distributed information about Flowers to the patrol officers, informed them about the graffiti near his house, and offered a steak dinner for any officer who made an arrest that led to the conviction or eviction of anyone living at 5800 Knox. There is conflicting evidence in the record as to whether Stoll's actions were contrary to official procedures.

As a result of Stoll's request, officers began to conduct heavy patrol on Knox Avenue. Department records show that officers checked the Flowers residence six times on directed patrol in August, for a total of sixty-nine minutes. Flowers testified that passing cruisers shined their lights into his home and frightened his family. He stated that a window at his home was broken during this period, shortly after a police squad car was seen driving by the house. Flowers averred that he and his family left the house to stay at another location for a weekend at the end of August. The directed patrol ended in late August, around the time Flowers filed this lawsuit against the City of Minneapolis and several officers of the Minneapolis Police Department, including Stoll.

Flowers alleged that Stoll and the other officers harassed him in violation of his constitutional rights, and that the City was liable for this harassment under 42 U.S.C. § 1983. Flowers presented three alternative theories of why the actions taken by Stoll violated his constitutional rights. First, he argued that Stoll harassed him because of his race, violating his right to equal protection of the laws under the Fourteenth Amendment. Second, he argued that Stoll harassed him solely on the basis of Stoll's personal animus toward him, also in violation of Flowers's right to equal protection of the laws. Third, Flowers argued that Stoll harassed him in retaliation for exercising his right to plead not guilty to the September 2003 charges, violating Flowers's rights under the First Amendment, as well as the Due Process and Equal Protection Clauses. Flowers also raised a federal substantive due process claim, a claim against the City

under § 1981 for alleged racial discrimination by the officers, and two state-law claims for defamation and negligent infliction of emotional distress.

The district court granted summary judgment for Stoll on all claims except for Flowers's substantive due process claim, and for the City and the other officers on all claims. *See Flowers v. City of Minneapolis*, No. 04-3959, 2006 WL 453206 (D. Minn. Feb. 22, 2006). Stoll appealed the denial of qualified immunity on the substantive due process claim, and this court reversed, holding that Flowers had not shown the deprivation of a fundamental constitutional right, as necessary for such a claim. *Flowers v. City of Minneapolis*, 478 F.3d 869 (8th Cir. 2007). On remand, the district court entered final judgment for Stoll, the other officers, and the City on all claims. Flowers now appeals the district court's judgment on his remaining constitutional claims against Stoll and the City, his § 1981 claim against the City, and his defamation claim against Stoll.

II.

Flowers argues that Stoll violated his constitutional rights by harassing him. At oral argument, Flowers's attorney characterized Stoll's actions as moving "far outside the bounds of what we accept as [a] normal or acceptable role for police officers," but expressed "frustration with our inability to find really clear text in the Constitution to fit this situation." The alleged misuse of public authority to pursue a private agenda is of course a matter of concern, but it is not our role on this appeal to consider possible violations of ethical canons or departmental regulations. The legal questions presented here are narrower, and we agree with the district court that Flowers has not produced sufficient evidence to demonstrate that he was denied a right guaranteed to him by the Constitution.

To support his constitutional claims, Flowers argues that Stoll harassed him because of his race, Stoll's irrational malice toward him, or his refusal to plead guilty

in his criminal case. This is a variant of a selective enforcement claim, in which Flowers contends that investigators were deployed to harass him and his family, albeit without effecting a seizure or initiating a prosecution.

The State, of course, retains broad discretion to decide whom to prosecute for violating the criminal laws, *Wayte v. United States*, 470 U.S. 598, 607 (1985), and the State's discretion as to whom to investigate is similarly broad. We have recognized that "courts should go very slowly before staking out rules that will deter government agents from the proper performance of their investigative duties." *United States v. Barth*, 990 F.2d 422, 425 (8th Cir. 1993) (internal quotation omitted). Law enforcement's decision about whom to investigate and how, like a prosecutor's decision whether to prosecute, is ill-suited to judicial review. *See Wayte*, 470 U.S. at 607. Courts are not well-equipped to evaluate whether a particular lead warrants investigation, because that decision may depend on the strength of the information provided, an agency's enforcement priorities, and how a particular investigation relates to an overall enforcement plan. *See id.* And judicial review of investigative decisions, like oversight of prosecutions, tends "to chill law enforcement by subjecting the [investigator's] motives and decisionmaking to outside inquiry." *Id.*

That said, prosecutorial discretion cannot be based on "race, religion, or other arbitrary classification," or on the exercise of a protected statutory or constitutional right, and selective enforcement claims should be judged according to "ordinary equal protection standards." *Id*. at 608 (internal quotation omitted). We assume for purposes of analysis that a claim of selective investigation or harassment may also run afoul of the Constitution if it flows from one of these impermissible motives. *See St. German of Alaska E. Orthodox Catholic Church v. United States*, 840 F.2d 1087, 1095 (2d Cir. 1988). Nonetheless, we do not think that Flowers has produced a submissible case under this framework.

Flowers points to two facts that he says demonstrate that he was targeted for harassment because of his race. First, he argues that his residence at 5800 Knox was the only home on the block with black residents, and that he and his family were the only persons investigated when graffiti appeared in the area. To establish a violation of the Equal Protection Clause, however, Flowers must show that he was treated differently than other persons who were "in all relevant respects similarly situated." *Bills v. Dahm*, 32 F.3d 333, 335 (8th Cir. 1994). Under the undisputed facts, Flowers was not similarly situated in all relevant respects to the other inhabitants of his neighborhood block. When new graffiti appeared in the area, Flowers had recently moved to the neighborhood, and – rightly or wrongly – a gang investigator told Stoll that Flowers was the uncle of a member of the gang to which the graffiti related. These factors plainly distinguish Flowers from others in the neighborhood who were longstanding residents and not identified by the gang unit.

Second, Flowers notes that after Stoll reported his suspicions to Donna Olson, the police department's point person for graffiti, Olson sent an e-mail to another officer that Stoll said "his block had been graffitied" and that "there were some [A]frican [A]merican kids that moved in down the block." We question whether this e-mail is admissible evidence that can be used to defeat Stoll's motion for summary judgment, given the hearsay issues involved. But even if Olson's email were admissible, Stoll's purported statement merely singles out certain individuals who had "moved in down the block," and identifies them as African American. Olson testified that she had asked Stoll if any teenagers had recently moved into the area, and her e-mail may reflect his response to this question. In any event, a reference to race made without a reflection of bias does not create a genuine issue of material fact on discriminatory intent. *See Fjelsta v. Zogg Dermatology, PLC*, 488 F.3d 804, 809-10 (8th Cir. 2007).

In another equal-protection theory, Flowers contends that he was intentionally singled out for harassment for no reason at all. The Supreme Court has recognized a

"class of one" equal protection claim in certain situations, where a plaintiff shows that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000) (per curiam). But the Court recently circumscribed this doctrine in a manner that leads us to dispose of Flowers's claim. In *Engquist v. Oregon Department of Agriculture*, 128 S. Ct. 2146 (2008), the Court held that "the class-of-one theory of equal protection has no application in the public employment context," *id*. at 2156, because the class-of-one theory was a "poor fit" in a context that involved discretionary decisionmaking:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be treated alike, under like circumstances and conditions is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id*. at 2154 (internal quotation omitted).

A police officer's decisions regarding whom to investigate and how to investigate are matters that necessarily involve discretion. *See United States v. Calva*, 979 F.2d 119, 123 (8th Cir. 1992). Indeed, the Court in *Engquist* used law enforcement officers to illustrate forms of state action that "by their nature involve discretionary decisionmaking":

> Of course, an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns. But allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or

articulable reason, would be incompatible with the discretion inherent in the challenged action. It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized.

128 S. Ct. at 2154. In light of *Engquist*, therefore, we conclude that while a police officer's investigative decisions remain subject to traditional class-based equal protection analysis, they may not be attacked in a class-of-one equal protection claim.

Flowers also failed to present sufficient evidence that he was harassed because of his decision to plead not guilty in a previous criminal case. Flowers argues that the timing of the directed patrols, conducted in August 2004, indicates that they were made in retaliation for his decision to plead not guilty and proceed to trial in September 2004. But evidence of temporal proximity alone is generally insufficient to raise a triable issue of material fact on retaliatory motive, *see Wilson v. Northcutt*, 441 F.3d 586, 592 (8th Cir. 2006), and Flowers does not point to any other evidence that Stoll targeted him because he pled not guilty. The timing is naturally explained by Stoll's discovery of graffiti and the gang unit's report in August 2004 that Flowers was related to a gang member.

Because Flowers cannot establish that an individual officer violated the Constitution, the district court also correctly dismissed Flowers's claim against the City for allegedly maintaining an unconstitutional custom or policy. *See McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005). Similarly, because Flowers may pursue a § 1981 claim against the City only through § 1983, *Lockridge v. Bd. of Trustees of Univ. of Ark.*, 315 F.3d 1005, 1007 (8th Cir. 2003) (en banc), and because Flowers has failed to make a submissible case that Stoll or other police officers targeted him for harassment because of his race, the district court properly dismissed Flowers's claim against the City under § 1981. *See Buffkins v. City of Omaha*, 922 F.2d 465, 468 (8th Cir. 1990).

III.

Flowers also appeals the district court's disposition of the defamation claim against Stoll under Minnesota law, which was before the district court based on supplemental jurisdiction under 28 U.S.C. § 1367(a). The district court ruled that an e-mail that Flowers alleged was defamatory was not sufficiently specific to constitute defamation, and that it was made with a proper purpose of investigating possible gang activity, so that the statements in the e-mail were conditionally privileged. *Flowers*, 2006 WL 453206, at *8. On appeal, Flowers argues that the statement in question was not made with a proper purpose, because Stoll targeted Flowers on account of his race and his protected speech. He does not address the lack of specificity. For the reasons stated by the district court, we conclude that the grant of summary judgment for Stoll on the defamation claim was proper. *See* 8th Cir. R. 47B.

\*      \*      \*

For the foregoing reasons, the judgment of the district court is affirmed.

_____