EASTERBROOK, Chief Judge,
concurring in the judgment.
My colleagues debate the role of motive and intent in class-of-one suits. Judge Posner (for four judges) and Judge Wood (for five) offer slightly different understandings of the role motive or intent should play in such suits. I think that it has no role at all.
Village of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), holds that the rational-basis test applies to class-of-one claims. That test asks whether a rational basis can be conceived, not whether one is established on the record or occurred to a defendant. See, e.g., FCC v. Beach Communications, Inc., 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993); Railroad Retirement Board v. Fritz, 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980). The Justices who dissented in Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008), contending that a class-of-one claim should have been allowed there, recognized this, writing: “But for this disclaimer [by defendants, who denied having any reason at all], the district court could have dismissed the claim if it discerned ‘any reasonably conceivable state of facts that could provide a rational basis for the [State’s actions],’ even one not put forth by the State.” 553 U.S. at 612 n. 2, 128 S.Ct. 2146 (citation omitted; second bracketed phrase in original).
It is easy to conceive two rational bases for defendants’ treatment of Del Marcelle. First, they had limited enforcement resources and could not fully investigate all complaints. Second, defendants may have concluded that Del Marcelle was imagining or exaggerating the problems he reported. Under the rational-basis test, either possibility requires judgment in defendants’ favor. There is no need for inquiry into the defendants’ state of mind. The upshot of today’s decision, however, is that something other than the normal rational-basis test applies to class-of-one claims in the seventh circuit. That is the very conclusion by this court that led to the grant of certiorari in Olech. If Justices thought they had disapproved our local rational-basis-plus-intent approach, that message has not been received.
I do not deny that intent can matter to equal-protection analysis. Rules based on suspect classes such as race are subject to strict scrutiny. State and local governments may try to disguise their criteria of decision by adopting rules that have the appearance but not the reality of neutrality. The Supreme Court has held that the adverse impact of neutral rules does not change the standard from rational basis to strict scrutiny — but that proof of intent to discriminate on a ground such as race or sex can do so. See, e.g., Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979); Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). If Del Marcelle were arguing that defendants held his race, sex, or religion against him, and were seeking heightened scrutiny, intent would matter. He does not contend, however, that defendants engaged in class-based discrimination; that’s why this is a class-of-one case. The only proper use of intent in a class-of-one case is to show that discrimination exists — in other words, to distinguish between disparate treatment and disparate impact. Yet defendants do not say that this is a disparate-impact case (perhaps because they tried but failed to arrest or ticket the bikers) rather than a disparate-treatment one. That makes motive and intent irrelevant to this litigation.
*901 What’s more, I do not think that the class-of-one theory itself has any role to play. No public employee attacked or injured Del Marcelle. His losses stem from private aggression by the bikers, which public officials failed to prevent. Inability of the police to show a rational basis for each decision about who is arrested or ticketed (compared with persons not arrested or ticketed) should not expose them to damages.
Del Marcelle is not entitled to an order requiring arrest or prosecution of the bikers, or to damages because of public officials’ decision not to do so. Castle Rock v. Gonzales, 545 U.S. 748, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005); DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); Leeke v. Timmerman, 454 U.S. 83, 102 S.Ct. 69, 70 L.Ed.2d 65 (1981); Linda R.S. v. Richard D., 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973). The Constitution does not create a general right to protection from private wrongdoers. The original meaning of the equal protection clause is that, if the police and prosecutors protect white citizens, they must protect black citizens too, but Del Marcelle does not allege racial discrimination or any other kind of class-based discrimination. His contention is that the police failed to protect him, personally, from private aggression that targeted him, personally. DeShaney shows that this is not a good constitutional claim.
This leaves an argument that the police violated the equal protection clause, even though not the due process clause, by issuing citations to Del Marcelle but not the bullies. That is a bad approach. It is inconceivable that the plaintiff could have prevailed in either Castle Rock or DeShaney by replacing a due-process theory with a class-of-one equal-protection theory; the claims advanced in those cases functionally were class-of-one claims, yet the plaintiffs lost. It was a premise in both Castle Rock and DeShaney that state officials had protected some persons but not the plaintiffs, who contended that they should have received the same benefit yet were denied it for no reason (ie., without a rational basis). That’s the same sort of claim Del Marcelle makes. He loses for the same reasons Gonzales and DeShaney lost.
Discrimination against members of a suspect class is actionable notwithstanding Castle Rock and DeShaney, but class-of-one distinctions are not. As for non-prosecution of the predators, the Court wrote in Linda R.S. that “a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.” 410 U.S. at 619, 93 S.Ct. 1146. That is a limit on standing; Linda R.S. holds that there is no justiciable controversy, which knocks out all substantive legal theories. Del Marcelle thus needs to show how he was injured by what the defendants did to him, rather than by what they didn’t do to other people or what they didn’t do for him.
Del Marcelle does not tell us, however, how the citations injured him. Any injury was meted out by the bikers, not by the police, which makes it hard to see how a claim centered on the citations has any prospect. If the citations were dismissed without trial or penalty, Del Marcelle is uninjured when compared with a world in which no one was prosecuted, and thus no discrimination could have occurred. If the citations were adjudicated, and Del Marcelle prevailed, again he is uninjured. If they were adjudicated, and he lost, then preclusion blocks this civil suit. How could Del Marcelle get damages on account of a potential defense that wasn’t raised, let alone a defense that was raised and rejected?
Put lack of injury, and a potential defense of preclusion, to the side. There is no constitutional problem. Persons ac *902 cused of wrongdoing can’t make class-of-one defenses to criminal charges. See, e.g., United States v. Armstrong, 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996); United States v. Moore, 543 F.3d 891, 901 (7th Cir.2008). Armstrong holds that a defense of selective prosecution is limited to racial discrimination or other class-wide inequality, which must be shown by strong evidence before courts can allow discovery. So if the citations Del Marcelle received were followed by prosecution, he could not defend by contending that he was being treated worse than the bikers. That’s not class-based discrimination.
If “I was treated worse than the bikers” is not a defense on the merits, how can it be a basis of damages against officers who issue citations that get proceedings under way? No decision of which I am aware holds that it violates the Constitution to initiate a criminal prosecution (or a civil-penalty proceeding) that can lead to a valid conviction, whether or not the same officers failed to arrest or ticket third parties. Quite the contrary, many cases hold that police cannot be ordered to pay damages even when the defendant prevails in a prosecution (or none is filed). For example, Hartman v. Moore, 547 U.S. 250, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006), holds that probable cause for an arrest knocks out a claim that the arrest violated the person’s rights under the first amendment. Probable cause is objective; the officers’ motives, beliefs, and so on, don’t matter and cannot create liability. Ashcroft v. alKidd, - U.S. -, 131 S.Ct. 2074, 2080-83, 179 L.Ed.2d 1149 (2011). That’s why probable cause blocks contentions that the officers had ulterior goals (such as favoring the bikers over Del Marcelle). Likewise probable cause prevents an award of damages under the fourth amendment for wrongful arrest. Indeed, Hunter v. Bryant, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991), holds that arresting officers can’t be liable if a reasonable person could have concluded that probable cause exists, even if it doesn’t.
Suppose the officers had placed Del Marcelle under arrest instead of just issuing citations. There is probable cause or there isn’t. If there is probable cause, the officers can’t be held liable. If there is not probable cause, and an objectively reasonable officer would not have believed that probable cause exists, then the officer is liable under the fourth amendment. Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), completes the picture by holding that the fourth amendment is the only source of rules governing the validity of arrests. Graham concludes, in particular, that an arrested person can’t present a claim under the due process clause. That must be true for a claim under the equal protection clause too, just as it is true (see Hartman) for a claim under the first amendment. Police need not arrest everyone who committed the same offense; selectivity is normal— and is proper, unless based on a forbidden classification such as race. Probable cause for arrest is a complete defense to an argument that other similarly situated persons were not arrested.
Apparently Del Marcelle was not arrested; the police just wrote a few tickets. How can the police be more exposed to awards of damages for writing tickets than for making full custodial arrests? That would create an incentive for needless arrests in order to create a shield from liability. Often people contend that police should be compelled to write tickets without arresting. Atwater v. Lago Vista, 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001), holds that the Constitution allows police to make custodial arrests for offenses punishable only by fines. That the defendants left Del Marcelle at liberty cannot be their undoing.
*903 Class-of-one liability for the toleration of private violence is blocked by Castle Rock and its predecessors; liability for arrests based on probable cause is blocked by Graham no matter what legal theory the plaintiff invokes; liability for criminal (and civil) prosecutions is blocked by Armstrong. Those decisions address the merits and cannot be circumvented by observing that police officers lack prosecutorial immunity. Citations, whether issued by an officer on the beat or a lawyer in an office, just get a legal process under way; they do not themselves cause injury and should not be a basis of liability no matter why someone writes them (or fails to write others). State law can create liability in tort (think malicious prosecution or abuse of process), but the Constitution is not a fount of national tort law, as the decisions I’ve mentioned show.
Any doubt on this score is stilled by Engquist. Although that ease’s holding is limited to public employees, its rationale is not.
Recognition of the class-of-one theory of equal protection on the facts in Olech was not so much a departure from the principle that the Equal Protection Clause is concerned with arbitrary government classification, as it was an application of that principle. That case involved the government’s regulation of property. Similarly, the cases upon which the Court in Olech relied concerned property assessment and taxation schemes. We expect such legislative or regulatory classifications to apply “without respect to persons,” to borrow a phrase from the judicial oath. See 28 U.S.C. § 453. As we explained long ago, the Fourteenth Amendment “requires that all persons subjected to ... legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed.” Hayes v. Missouri, 120 U.S. 68, 71-72 [7 S.Ct. 350, 30 L.Ed. 578] (1887). When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to assure that all persons subject to legislation or regulation are indeed being “treated alike, under like circumstances and conditions.” Thus, when it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a “rational basis for the difference in treatment.” Olech, 528 U.S., at 564 [120 S.Ct. 1073].
What seems to have been significant in Olech and the cases on which it relied was the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed. There was no indication in Olech that the zoning board was exercising discretionary authority based on subjective, individualized determinations — at least not with regard to easement length, however typical such determinations may be as a general zoning matter. Rather, the complaint alleged that the board consistently required only a 15-foot easement, but subjected Olech to a 33-foot easement. This differential treatment raised a concern of arbitrary classification, and we therefore required that the State provide a rational basis for it....
There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be “treated alike, under like circumstances and conditions” is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge *904 based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.
Suppose, for example, that a traffic officer is stationed on a busy highway where people often drive above the speed limit, and there is no basis upon which to distinguish them. If the officer gives only one of those people a ticket, it may be good English to say that the officer has created a class of people that did not get speeding tickets, and a “class of one” that did. But assuming that it is in the nature of the particular government activity that not all speeders can be stopped and ticketed, complaining that one has been singled out for no reason does not invoke the fear of improper government classification. Such a complaint, rather, challenges the legitimacy of the underlying action itself — the decision to ticket speeders under such circumstances. Of course, an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns. But allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action. It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized.
This principle applies most clearly in the employment context, for employment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify. As Engquist herself points out, “[ujnlike the zoning official, the public employer often must take into account the individual personalities and interpersonal relationships of employees in the workplace. The close relationship between the employer and employee, and the varied needs and interests involved in the employment context, mean that considerations such as concerns over personality conflicts that would be unreasonable as grounds for ‘arm’s-length’ government decisions (e.g., zoning, licensing) may well justify different treatment of a public employee.” Unlike the context of arm’s-length regulation, such as in Olech, treating seemingly similarly situated individuals differently in the employment context is par for the course.
Thus, the class-of-one theory of equal protection — which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review — is simply a poor fit in the public employment context. To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship. A challenge that one has been treated individually in this context, instead of like everyone else, is a challenge to the underlying nature of the government action.
553 U.S. at 602-05, 128 S.Ct. 2146 (internal citations omitted without indication). This passage tells us that public employment is just an example of the situations in which the Constitution tolerates selective action, without requiring public officials to explain to a court’s satisfaction why they exercised discretion in favor of one person and against another. Issuing citations is another example. And although there is a rational basis for letting most speeders go, Engquist did not rely on that proposition. Nor did it say that difficulty of proof explains why unequal enforcement is allowed. The language I have quoted says that issu *905 ing particular law-enforcement citations is outside the scope of class-of-one analysis because law enforcement is permissibly discretionary.
Engquist shows that discretionary decisions in law enforcement are not amenable to class-of-one analysis. See Flowers v. Minneapolis, 558 F.3d 794, 799-800 (8th Cir.2009) (“a police officer’s investigative decisions ... may not be attacked in a class-of-one equal protection claim”). A contrary conclusion would effectively constitutionalize the Administrative Procedure Act and open all public officials’ decisions to judicial review to determine whether they are arbitrary or capricious. (A capricious decision must lack a rational basis.) Indeed, in the name of the equal protection clause Del Mareelle asks us to go beyond the APA by ruling that (a) the remedy is damages from the decisionmaker’s pocket, not just an order setting aside the arbitrary or capricious decision, and (b) the initiation of a process, and not just the outcome, is subject to judicial review.
One of the APA’s basic rules is that review is limited to the agency’s final decision. Issuing a complaint is not reviewable even though it portends a multi-year adjudicative process that may cost millions to resolve. FTC v. Standard Oil Co., 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980). See also Sackett v. EPA, — U.S. -, 132 S.Ct. 1367, 1371-72, 182 L.Ed.2d 367 (2012) (discussing what makes an act “final” under the APA). If the target of the complaint prevails before the agency, there will never be judicial review, and the private party must bear its own attorneys’ fees under the American Rule. An argument that similarly situated persons have not been subjected to this costly process does not authorize judicial review of the complaint — indeed, does not authorize a court to set aside the final decision either. FTC v. Universal-Rundle Corp., 387 U.S. 244, 87 S.Ct. 1622, 18 L.Ed.2d 749 (1967); Moog Industries, Inc. v. FTC, 355 U.S. 411, 78 S.Ct. 377, 2 L.Ed.2d 370 (1958). Thus there is no class-of-one doctrine in federal administrative law, any more than in criminal law. But under Del Marcelle’s approach there is a constitutional class-of-one doctrine, enforced by awards of damages, regulating the decision by police officers to issue a ticket initiating a legal inquiry — and perhaps administrative prosecutors at the FTC to issue a complaint. If judges are going to apply the APA to state and municipal governments through the Constitution, which we shouldn’t, we certainly should not go beyond the APA by creating personal liability for issuing a complaint or citation to one party but not another said to be similarly situated.
Del Mareelle cannot prevail whether his complaint concerns failure to prosecute the bikers or the tickets he received, and whether or not a class-of-one theory is available. I therefore concur in the decision affirming the judgment of the district court.