# United States Court of Appeals

### For the Eighth Circuit

_____

No. 20-2244

_____

Libertarian Party of Minnesota; Chris Holbrook; Mason McElvain; Chris Dock;
Brian McCormick

*Plaintiffs - Appellants*

v.

Steve Simon, in his official capacity as the Minnesota Secretary of State, or his
successor

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: June 16, 2021
Filed: September 3, 2021
[Unpublished]

_____

Before GRUENDER, ARNOLD, and STRAS, Circuit Judges.

_____

PER CURIAM.

The Libertarian Party alleges that Minnesota's election laws place its candidates and supporters at an unfair disadvantage. The district court[1] dismissed the complaint because it did not state a claim. We affirm.

## I.

Different rules apply to major- and minor-party candidates in Minnesota. Major-party candidates must win a primary election to earn a spot on the general-election ballot. Minor-party candidates, by contrast, must navigate a nominating-petition process that requires the collection of signatures. *See* Minn. Stat. §§ 204B.03, 204B.08, subdiv. 3. In addition to satisfying a number of technical requirements, the nominating petition must have the following oath printed on each page: "I solemnly swear (or affirm) . . . that I do not intend to vote at the primary election for the office for which this nominating petition is made . . . ." *Id.* § 204B.07, subdiv. 4.

All Libertarian Party candidates must meet these requirements. When some failed to do so, the Libertarian Party and four of its supporters[2] sued Minnesota Secretary of State Steve Simon. The district court dismissed the case. *See* Fed. R. Civ. P. 12(b)(6).

## II.

We review the dismissal de novo, "accepting as true the allegations set forth in the complaint and drawing all reasonable inferences in favor of" the plaintiffs. *Star City Sch. Dist. v. ACI Bldg. Sys., LLC*, 844 F.3d 1011, 1016 (8th Cir. 2017). On

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

[2]They are Chris Holbrook, Mason McElvain, Chris Dock, and Brian McCormick.

appeal, the plaintiffs focus on three constitutional challenges. One of them was previously abandoned, and the other two are not viable.

The first, which is that the oath requirement is vague and unconstitutionally burdensome, was "intentional[ly] . . . abandon[ed]" before the district court. *United States v. Olano*, 507 U.S. 725, 733 (1993) (quotation marks omitted). In response to Secretary Simon's motion to dismiss, the plaintiffs stated: "[u]pon consideration of the constitutional arguments regarding the minor political party petition oath[,] . . . to the extent separately challenged in the amended complaint, the oath . . . requirement[] [is] abandoned as [a] separate claim[]." This statement, though arguably vague itself, "appear[s] to concede that the[] challenge to the oath is untenable," which is how the district court understood it too. For that reason, we conclude that the plaintiffs have waived this issue. *See United States v. Demilia*, 771 F.3d 1051, 1055 (8th Cir. 2014) ("Under our waiver jurisprudence, a right—such as the right to have recourse to a legal rule or argument—is waived when it is intentionally relinquished or abandoned." (quotation marks omitted)).

The plaintiffs preserved their next challenge, but in the end, it meets a similar fate. In this one, the plaintiffs take aim at signature collection, which they claim must be done in person, even though major-party supporters can express their candidate preferences by casting an absentee ballot by mail. Without a comparable alternative for minor parties, they say, Minnesota's scheme violates the Equal Protection Clause of the Fourteenth Amendment. *See* U.S. Const. amend. XIV, § 1.

Even assuming that major- and minor-party candidates are similarly situated to one another—a question we need not decide today—nothing in Minnesota law requires *any* candidate to collect signatures in person. To the contrary, nominating petitions are freely available online, meaning that anyone can print one, sign it, and send it to a candidate for filing. *See* Minn. Stat. § 204B.07. Like the district court, we will not invent a restriction by adding language to an otherwise unambiguous

statute. *See Larson v. State*, 790 N.W.2d 700, 703 (Minn. 2010) ("If a statute is unambiguous, then we must apply the statute's plain meaning.").

The plaintiffs' final challenge also alleges discriminatory treatment, but this time the focus is squarely on supporters, not candidates. The plaintiffs believe that minor-party supporters are treated unequally because they have to reveal their candidate preferences in nominating petitions, even though major-party supporters can keep their votes secret.

The central flaw in this argument is that signatures on nominating petitions are not votes. For one thing, the eligibility requirements are different. Voters in primary elections have to be *registered* to vote, Minn. Stat. § 201.018, whereas those signing a nominating petition must only be *eligible*, see *id.* § 204B.08, subdiv. 2. In Equal Protection parlance, what this means is that petition signers are not necessarily similarly situated to voters. *See Flowers v. City of Minneapolis*, 558 F.3d 794, 798 (8th Cir. 2009) ("To establish a violation of the Equal Protection Clause, . . . [the plaintiff] must show that he was treated differently than other persons who were in all relevant respects similarly situated." (quotation marks omitted)).

For another, every *vote* in Minnesota *is* secret, regardless of who casts it. To be sure, the oath requires petition signers to have no existing intention to cast a primary-election ballot. *See* Minn. Stat. § 204B.07, subdiv. 4. But, as the district court observed, they are free to change their minds. And if they do, their votes will be secret just like everyone else's. *See Keevan v. Smith*, 100 F.3d 644, 648 (8th Cir. 1996); *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994); *see also Mills v. City of Grand Forks*, 614 F.3d 495, 500 (8th Cir. 2010) (explaining why the plaintiff's pleadings failed to demonstrate differential treatment).

## III.

We accordingly affirm the judgment of the district court.

_____