File Name: 08a0466n.06

Filed: August 4, 2008

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 07-3732

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

JODI SCHNEIDER,

      Plaintiff-Appellee,

v.

FRANKLIN COUNTY, OHIO, et al.,

      Defendants-Appellants.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

_____/

Before:      MARTIN and GRIFFIN, Circuit Judges, and GIBSON, Circuit Judge.[*]

      BOYCE F. MARTIN, JR., Circuit Judge.  Plaintiff Jodi Schneider alleges that her

constitutional rights were violated when police officers pulled over the car in which she was riding

without probable cause and forced her to exit the vehicle despite an obvious medical injury.  The

district court denied defendant police officers' motion for summary judgment on grounds of

qualified immunity, and they have filed this interlocutory appeal.  Appellee Schneider moved to

dismiss this appeal because of lack of jurisdiction, and alternately argues that the district court was

correct in denying qualified immunity.  For the reasons set out below, we deny the motion to dismiss

and AFFIRM in part, and REVERSE in part the order of the district court.

---

      [*] The Honorable John R. Gibson, Senior United States Circuit Judge for the Eighth Circuit,
sitting by designation.

I

Schneider moves to dismiss this appeal, arguing that jurisdiction is improper because the defendants do not confine their appeal to issues of law and instead continue to dispute material facts. In *Berryman v. Rieger*, 150 F.3d 561, 564 (6th Cir. 1998), we stated that a defendant seeking to take an interlocutory appeal from the denial of qualified immunity "should be prepared to concede the best view of the facts to the plaintiff and discuss only the legal issues raised by the case." We have dismissed other interlocutory appeals for failing to conform to this standard. *See Booher v. N. Ky. Univ. Bd. of Regents*, 163 F.3d 395, 396-97 (6th Cir. 1999). The defendants contend that their appeal raises several legal issues to be resolved by this Court and dismissal is therefore inappropriate. We agree that the legal questions at issue counsel in favor of jurisdiction, and will hereinafter confine ourselves only to the legal issues raised in this case instead of the disputed facts. *See, e.g.*, *Phelps v. Coy*, 286 F.3d 295, 298-99 (6th Cir. 2002) (if the court can ignore defendant's attempts to dispute the facts and nonetheless resolve the legal issue, it will obviate the need to dismiss the entire appeal for lack of jurisdiction); *see also Beard v. Whitmore Lake Sch. Dist.*, 402 F.3d 598, 602 n.5 (6th Cir. 2005).

II

This action is based on an incident that occurred during the early morning hours of November 14, 2003. Plaintiff Jodi Schneider and her boyfriend, Jason Jones, had been at a bar in Hilliard, Ohio, since about 5:00 p.m. the previous day. They arrived in a Cadillac Eldorado, which was parked in the bar's parking lot. Earlier that evening, the Special Investigations Unit of the Franklin

County Sheriff's Office had received a complaint of a suspect driving a Cadillac who was dealing drugs in the vicinity of the bar. In response, two undercover Special Investigations Unit officers, Burns and Strayer, went to stake out the parking lot in a Ford pickup truck. Two deputy sheriffs, Meister and Wetzel, were also patrolling nearby in their official marked vehicle.

Shortly after 1:00 a.m., Schneider and Jones left the bar. Schneider was noticeably intoxicated and slipped and fell on her way to the car, injuring her right ankle. She was helped into the passenger seat of the car by friends, whereupon she took off her shoes and socks to compare her ankles. Jones began to drive out of the parking lot, through several other lots and down a service road. Once he entered this service road, he traveled a short distance before being pulled over by Meister and Wetzel.

Prior to the traffic stop, Meister and Wetzel had been in radio contact with the undercover Special Investigations Unit detectives. Burns advised the deputies that the Cadillac had left the bar parking lot, and requested that the deputies stop the car and identify the occupants. Burns asked Meister to "see if you can find a violation for me, so I don't have to look as hard." Meister's response was, "Oh, I'll find something." Burns replied, "If you don't, I will." JA 711-712. Burns and Strayer followed Jones out of the parking lot and onto the road in their unmarked car. At this point, one of the officers may or may not have paced Jones's car and found it to have been speeding.[1] Burns then radioed Meister to pull over the Cadillac.

---

[1] Jones testified that Burns's pickup truck was at no point between Meister's police cruiser and his car, and could not have paced him. There is also conflicting testimony as to whether Meister's cruiser paced Jones's car.

There was also a disputed lane change. Deputy Meister radioed to Burns, "I've got the lovely marked lanes," which Burns interpreted to mean that there had been a violation, but both Officers Meister and Wetzel stated in their depositions that the only reason the Cadillac was stopped was for speed. Jones also testified that Meister told him that he was stopped for speeding, but did not mention a lane violation.

After Meister and Wetzel stopped the car, Meister went to the driver's side and Wetzel approached Schneider's side of the car. Meister examined Jones's identification documents, administered a field sobriety test (which Jones passed), and placed Jones into the back seat of the officers' car while Meister ran Jones's information through the police computer. At this point Jones told Meister that Schneider was hurt. Meanwhile, back at the Cadillac, Wetzel asked Schneider for her drivers' license, and she asked him why he needed to see it since she had not been driving. After Wetzel asked a second time, she gave him her license. Wetzel then ordered Schneider to get out of the car. She told him that she could not get out because of her hurt ankle. By this time Meister had returned to the Cadillac, leaving Jones seated in the cruiser. Wetzel explained to Meister that Schneider did not want to exit the car because of her injured ankle. Meister also observed Schneider's ankle himself, testifying that "I noticed her ankle was very dislocated. It was not as it should have been . . . I just remember seeing the ankle and it was pretty gruesome . . . I'm not a doctor or anything, but it was obviously, there was a deformity there." JA 589, 626. At some point, Wetzel yelled at Schneider, "I'm not going to ask you again [to get out of the car]" and Schneider felt compelled to get out of the car, whereupon she immediately fell to the ground and broke her ankle.

Schneider brought this civil rights action against Meister, Wetzel, and various other Franklin County defendants for violations of her Fourth and Fourteenth Amendment rights by detaining her without probable cause during a traffic stop and, while she was in custody, ordering her out of the car with knowledge of her pre-existing injury. The police officers moved for summary judgment on various grounds, which the district court granted in part and denied in part. Meister and Wetzel now appeal the denial of summary judgment, arguing that even viewing the facts in the light most favorable to Schneider, they are entitled to qualified immunity.

III

This Court reviews *de novo* a district court's denial of summary judgment on qualified immunity grounds. *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996). Upon a motion for summary judgment on qualified immunity, this Court reviews all evidence in a light most favorable to the plaintiff, taking all inferences in her favor. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004).

Qualified Immunity

In order to prevail on a civil rights claim under 42 U.S.C. § 1983, a plaintiff must establish that a person acting under the color of state law deprived her of a right secured by the Constitution or laws of the United States. *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006). Plaintiffs must also overcome the defense of qualified immunity, which shields government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

In determining whether qualified immunity applies, this Court employs a two-part test, asking (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-311 (6th Cir. 2005). In effect, this requires that in order to hold the officers liable in their individual capacities under 42 U.S.C. § 1983, Schneider must show not only that the officers' actions were unconstitutional, but also that they should have known at that time that they were violating Schneider's rights. *See Harlow*, 457 U.S. at 818. "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)). Schneider has the burden of demonstrating that the officers are not entitled to qualified immunity. *Id.* at 846.

Meister's violation of Schneider's Fourth Amendment rights

Schneider first alleges that officer Meister had no probable cause to stop Jones's car, and thus knew they were committing a constitutional violation and should not be entitled to qualified immunity.[2] The law is established that "the decision to stop an automobile is reasonable where the

---

[2] The Fourth Amendment charge can be dismissed as to Wetzel, since Schneider presented no evidence that Wetzel was actually responsible for the stop. *See Ghandi v. Police Dep't of Detroit*, 747 F.2d 338 (6th Cir. 1984) (mere presence without a showing of direct responsibility will not subject an officer to liability). Burns and Strayer also did not stop the car.

police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). Subjective intentions play no role in probable cause Fourth Amendment analysis. *Id.* at 812-13.

The issue here on review is whether, examining the facts in the light most favorable to Schneider, Meister knew that pulling Jones over was a constitutional violation. Schneider first offers Jones's testimony that he was aware that police officers frequented the area, that he saw the deputies in the official car were behind him, and that his 1985 Cadillac could not have reached 60 mph in such a short distance and thus would not (and could not) have been speeding. Second, expert testimony established that even if the officers had paced the car, they could not have done so for long enough to obtain an accurate reading of the Cadillac's speed. Finally, both Meister and Wetzel testified that speeding was the only basis on which the Cadillac was stopped. We therefore conclude for the purpose of this review that the violations did not occur and Schneider's constitutional rights were violated. *See United States v. Ferguson*, 8 F.3d 385, 388 (6th Cir. 1993) (a police officer cannot make a stop without probable cause).

Defendants argue that even if Schneider's clearly established constitutional rights were violated by the stop, Meister is entitled to qualified immunity because his conduct in relying on the direction of Burns was not objectively unreasonable. The reasonableness of Meister's reliance on Burns is not our only concern, however. Our case law states that a seizure conducted in reliance on a dispatch is proper only if the law enforcement officer *who issued the information* possessed the necessary reasonable suspicion. *Smoak*, 460 F.3d at 779. We do not entitle one officer to rely on another officer's unreasonable directive, insulating both the officer issuing the directive (because he

did not effectuate the actual stop) and the officer who made the stop (because he was acting at the direction of the issuing officer). Because the facts viewed in a light most favorable to Schneider compel the conclusion that Burns did not have a reasonable suspicion that Jones was speeding, Meister was therefore not entitled to rely on those representations. Evidence of Burns's and Meister's conversation before the stop (deciding together to "find" a violation) could also support Schneider's assertion that Meister knew that Burns was making up a violation. Therefore, the district court properly denied qualified immunity to Meister.

The violation of Schneider's Fourteenth Amendment rights

Schneider next argues that Wetzel violated her Fourteenth Amendment rights by ordering her out of the car despite her clear medical injury. Defendants argue that an officer making a traffic stop may order passengers out of the car pending completion of the stop. *Maryland v. Wilson*, 519 U.S. 408, 415 (1997). Schneider's claim concerns not the legality of the order, but the officers' alleged unreasonableness in forcing her to exit her car despite a clear medical injury. She argues that under two separate theories, the "special relationship" doctrine as well as the "state-created danger" doctrine, the police officers should have realized that ordering her out of her car would have caused her to further injure herself.

Police are generally not liable for injuries sustained by private citizens as a result of their own or another private citizen's conduct. *See, e.g.*, *Deshaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). The two applicable exceptions to this general rule are (1) the custody exception, also called the "special relationship" exception, and (2) the state-created danger

exception. *Id.* at 199-201. The first exception is premised on an affirmative act that exposes an individual to harm after being placed in a "special relationship" with the state, such as in an officer's custody. *Jackson v. Schultz*, 429 F.3d 586, 591-92 (6th Cir. 2005). In order to show an affirmative duty under the state-created-danger exception, Schneider must show (1) an affirmative act by the police that created or increased a risk that Schneider would be exposed to injury or violence, (2) a special danger to Schneider such that the officers' acts placed her specifically at risk, as distinguished from a risk that affects the public at large, and (3) that the officers knew or should have known that their actions specifically endangered Schneider. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998). Liability requires "deliberate indifference" by the police when the police "had time to deliberate on what to do." *Bukowski v. City of Akron*, 326 F.3d 702, 710 (6th Cir. 2003).

Turning to the first exception, the officers had placed Schneider in custody and thus owed her a duty of care. Police have "seized" a person when, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *See United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980). Since the officers had taken the driver of her car into custody and began to issue verbal commands, Schneider would not have felt free to leave the scene and thus was in custody. *Id.* at 554 ("Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers . . . or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."). This custody created a "special relationship," and thus the officers

owed a duty of care to Schneider. *See Stemler v. City of Florence*, 126 F.3d 856, 869 (6th Cir. 1997).

Once Schneider was placed into custody, the police officers affirmatively acted in a way that exposed her to harm.[3] The question of whether the officers exhibited a deliberate indifference to Schneider's injury should be answered by a jury, but taking the facts on the record in the light most favorable to Schneider, it appears that the officers knew enough to realize that ordering her out of the car could create a substantial risk of injury. *See Sperle v. Mich. Dep't of Corrs.*, 297 F.3d 483, 493 (6th Cir. 2002) ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Both men were able to see that Schneider was hurt and conferred over the fact that Schneider did not want to exit the car; Meister also testified that "I noticed her ankle was very dislocated. It was not as it should have been . . . I just remember seeing the ankle and it was pretty gruesome . . . I'm not a doctor or anything, but it was obviously, there was a deformity there." JA 589, 626 (internal citation and quotation marks omitted).

Schneider also established a violation under the second exception: state-created danger. Here, Wetzel's commanding Schneider to exit the car after seeing her injury was (1) an affirmative act that created or increased a risk that Schneider would be exposed to injury or violence; (2) that created a special danger to Schneider such that the officers' acts placed her specifically at risk. *Cf. DeShaney*, 489 U.S. at 201 (finding no liability where the State "played no part in [the] creation" of

---

[3] Deputy Meister's role in ordering Schneider out of the car is unclear and should be determined by the jury.

the danger). Further, based on their observations of her injuries, the officers knew or should have known that the order specifically endangered Schneider.

Turning to the qualified immunity analysis under either exception, determining whether the officers' conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known" requires an examination in light of the specific conduct alleged in this case, "not as a broad general proposition." *See Smoak*, 460 F.3d at 777; *Saucier*, 533 U.S. at 201. Schneider alleges that although police officers can require passengers to exit a car during a traffic stop under *Maryland v. Wilson*, 519 U.S. at 415, defendants should have known this did not give them the power to order a non-violent, non-threatening woman with a serious injury out of a car where the exit threatened to further compound the injury. Indeed, Deputy Meister admitted as much in his deposition: in response to the question, "Given what you saw of her leg before she got out . . . would it be reasonable for an officer to order her out of the vehicle?" Meister answered, "No." JA 614. Qualified immunity is thus inappropriate as to Schneider's Fourteenth Amendment claims.

IV

Because the facts taken in the light most favorable to Schneider would establish Fourth and Fourteenth Amendment violations, and because the reasonableness of the officers' actions depend heavily on the determination of contested facts, the judgment of the district court denying qualified immunity to the officers is AFFIRMED in part, and REVERSED in part.