RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0003p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

LYNIECE NELSON, on behalf of herself individually and as Personal Representative of the Estate of Henry Hilliard a.k.a. Shelly Hilliard,

*Plaintiff-Appellee,*

        *v.*

CITY OF MADISON HEIGHTS, et al,

*Defendants,*

CHAD WOLOWIEC,

*Defendant-Appellant.*

No. 15-2441

---

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 5:13-cv-10632—Judith E. Levy, District Judge.

Argued: October 18, 2016

Decided and Filed: January 9, 2017

Before: KEITH, BATCHELDER, and CLAY, Circuit Judges.

---

## COUNSEL

**ARGUED:** Rick J. Patterson, POTTER, DEAGOSTINO, O'DEA & PATTERSON, Auburn Hills, Michigan, for Appellant. Kathryn Bruner James, GOODMAN & HURWITZ, P.C., Detroit, Michigan, for Appellee. **ON BRIEF:** Rick J. Patterson, Steven M. Potter, Robert C. Clark, POTTER, DEAGOSTINO, O'DEA & PATTERSON, Auburn Hills, Michigan, for Appellant. Kathryn Bruner James, William H. Goodman, Julie H. Hurwitz, GOODMAN & HURWITZ, P.C., Detroit, Michigan, for Appellee.

---

**OPINION**

---

DAMON J. KEITH, Circuit Judge.  Oakland County Police Officer Chad Wolowiec ("Officer Wolowiec") appeals from the district court's order denying his motion for summary judgment against Lyniece Nelson's ("Nelson") § 1983 claims against him in connection with her daughter's death.  We **AFFIRM**.

## I. BACKGROUND

This case involves the events that led to the unfortunate death of nineteen-year-old Shelly Hilliard ("Hilliard").[1]  On October 19, 2011, Hilliard was staying at a Motel 6 in Madison Heights, Michigan.  Officer Wolowiec was also at the motel that day conducting a narcotics investigation.  According to Officer Wolowiec's deposition testimony, he walked by Hilliard's room and saw a bag of marijuana through one of the open windows.  Officer Wolowiec called for assistance and police officer David Koehler ("Officer Koehler") arrived on the scene. Officers Wolowiec and Kohler initiated a "knock and talk" at the door of Hilliard's hotel room. After Hilliard consented to the officers' request to enter her room, they found a bag of marijuana in the bathroom.

To avoid arrest, Hilliard asked whether she could "work off" the possession charge. Hilliard agreed to call her drug dealer, Qasin Raqib ("Raqib"), also known as "Red," and order drugs from him.  After she called Raqib and he spoke with Officer Wolowiec to confirm the order, Raqib agreed to meet them at the hotel room in twenty minutes with the drugs.  However, Officer Wolowiec planned to have officers make a traffic stop and intercept Raqib before he arrived.

Hilliard signed a confidential informant form provided by Officer Wolowiec, which provided that "[t]he Oakland County Sheriff Department will use all reasonable means to protect your identity; however, this cannot be guaranteed."  Officer Wolowiec asked Hilliard

---

[1]While irrelevant to this case, Hilliard was a transgender woman whose legal name was Henry Lee Hilliard.  All references to Hilliard will use female pronouns.

whether she was afraid that Raqib would hurt her if he found out she was the informant, and she responded "No." However, Officer Wolowiec was aware that Hilliard knew nothing about Raqib other than he was her drug dealer. After Hilliard signed the form, Officer Wolowiec took her away from the hotel room because he did not want her to be present if the police were unable to apprehend Raqib.

At approximately 1:12 a.m., Officer Koehler observed a vehicle that matched the description of Raqib's vehicle and made a traffic stop. Officer Wolowiec parked across the street with Hilliard in his vehicle so that Raqib would not see them. Officer Koehler conducted a canine search of Raqib's car while Raqib and his passenger, Marquita Clark ("Clark"), waited in a third officer's vehicle. Sometime after other officers searched Raqib and Clark, Officer Wolowiec spoke directly with Clark. Officer Wolowiec told Clark that he was the person who ordered the drugs over the phone and asked where Clark got the drugs that officers found during the search.

When asked in his deposition why he did this, Officer Wolowiec said, "I don't know." Officer Wolowiec testified that he did not think these statements would reveal Hilliard as the informant because Clark was not on the initial call and because Clark told him that she did not know who they were going to meet at the motel. After Raqib and Clark's arrests, Officer Wolowiec called Hilliard to advise her that Raqib and Clark believed she had set them up and that they appeared upset about it. Officer Wolowiec testified that Hilliard stated that she did not care. Officer Wolowiec advised Hilliard to stay away from Raqib and Clark and to call him or 9-1-1 if anything seemed out of the ordinary.

Clark testified during a hearing regarding Hilliard's murder that Officer Wolowiec explicitly told her that Hilliard set up Raqib for arrest. Clark also testified that she told Raqib that Hilliard was an informant after their release from jail on the day after their arrest. In interviews with police, Raqib stated that Clark told him that Hilliard informed on him. Officer Wolowiec's counsel conceded during oral argument that for the purposes of the summary judgment motion, the district court could presume that Officer Wolowiec disclosed Hilliard's identity directly to Clark.

On October 20, 2011, Hilliard informed her mother, Nelson, about the officers' coming to the room, finding the drugs, and that she had become a confidential informant to work off the charge. Nelson testified that Hilliard left home when she was sixteen years old and she did not come back home until she was eighteen.

On October 23, 2011, at approximately 1:00 a.m., Robert Bowen ("Bowen"), a cab driver and Hilliard's friend, drove Hilliard to see a "client" in Detroit.[2] Bowen saw two figures standing on the sidewalk, one of whom approached the vehicle and paid the fare for the cab ride. After Bowen dropped her off, Hilliard called him and asked him to stay on the line because something did not seem right. He then heard Hilliard say, "what are you doing" and "no" and the phone went dead. Bowen circled back to the area but could not find Hilliard. Bowen told police that he had never taken Hilliard to that location before and that he usually drove her to hotels in the suburbs. Detectives later discovered that Raqib and an accomplice, James Matthews, abducted and murdered Hilliard. Hilliard's body was found burned and dismembered on the I-94 service drive near Bewick Street.[3]

Nelson filed a complaint alleging substantive due process, wrongful death, and interference with familial relations claims under 42 U.S.C. § 1983 on her own behalf and as personal representative of Hilliard against the City of Madison Heights, Oakland County, Oakland County Police Officer Wolowiec, and Madison Heights Police Officer Koehler. Defendants Oakland County and Officer Wolowiec filed a motion for summary judgment. The district court denied the motion and Officer Wolowiec timely appealed.

## II. DISCUSSION

### a. Standard of Review

"We review the 'denial of summary judgment on the grounds of qualified immunity *de novo* because application of this doctrine is a question of law.'" *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 399 (6th Cir. 2009) (quoting *McCloud v. Testa*, 97 F.3d 1536, 1541 (6th Cir.

---

[2]Hilliard was a prostitute. She did not know the person who called her to set up the appointment.

[3]Nelson reported Hilliard missing on October 25, 2011, which assisted detectives in piecing together that Hilliard had been murdered by Raqib.

1996)). "The question on summary judgment is whether the moving party has demonstrated that the evidence available to the court establishes no genuine issue of material fact such that it is entitled to a judgment as a matter of law." *Dobrowski v. Jay Dee Contractors, Inc.*, 517 F.3d 551, 554 (6th Cir. 2009). "A defendant challenging a denial of summary judgment on qualified immunity grounds must be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Thompson v. Grida*, 656 F.3d 365, 367 (6th Cir. 2011) (internal quotation marks omitted).

### b. **Analysis**

"Section 1983 imposes civil liability on a person acting under color of state law who deprives another of the 'rights, privileges, or immunities secured by the Constitution and laws.'" *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1060 (6th Cir. 1998) (quoting 42 U.S.C. § 1983). "[W]hile the state generally does not shoulder an affirmative duty to protect its citizens from private acts of violence, it may not cause or greatly increase the risk of harm to its citizens without due process of law through its own affirmative acts." *Id.* at 1066. Nelson claimed that Officer Wolowiec was liable for her daughter's death under the "state created danger" theory of liability. "Liability under the state-created-danger theory is predicated upon affirmative acts by the state which either create or increase the risk that an individual will be exposed to private acts of violence." *Id.*

> To bring a 'state created danger' claim, the individual must show: '(1) an affirmative act by the state which either created or increased the risk that the [decedent] would be exposed to an act of violence by a third party; (2) a special danger to the [decedent] wherein the state's actions placed the [decedent] specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the [decedent].'

*Jones v. Reynolds*, 438 F.3d 685, 690 (6th Cir. 2006) (quoting *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003)).

Officer Wolowiec asserts that he has qualified immunity from Nelson's "state created danger" claim under § 1983. "Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982).

"Government officials performing discretionary functions are afforded qualified immunity . . . as long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Poe v. Haydon*, 853 F.2d 418, 423 (6th Cir. 1988) (citing *Harlow*, 457 U.S. at 818). In *Kallstrom*, this court stated that "an individual's 'interest in preserving her life is one of constitutional dimension.'" *Kallstrom*, 136 F.3d at 1063 (quoting *Nishiyama v. Dickson Cty.*, 814 F.2d 277, 280 (6th Cir. 1987)).

Officer Wolowiec argues that his actions did not create or increase the risk of violence that Hilliard faced because she voluntarily became a confidential informant. Officer Wolowiec relies on *Summar* to support this argument. In *Summar*, an officer gave a prosecutor a confidential informant's name so that it could be included in a pleading. *Summar v. Bennett*, 157 F.3d 1054, 1056 (6th Cir. 1998). The defendant in that case became aware of the pleading and subsequently had the informant murdered. *Id.* This court concluded that the state was not liable for the confidential informant's death because he "voluntarily elected to serve as a confidential informant, despite being advised that he would have to testify and reveal his status as an agent of the police." *Id.* at 1058. However, Hilliard's case is different.

No one advised Hilliard that she would have to, nor did she agree to, "testify and reveal [her] status." She simply agreed to help the officer apprehend a drug dealer. There was no discussion of any future need for her help after the traffic stop that would lead to Raqib's arrest, nor was there any apparent likelihood that the police would publicly reveal her identity following Raqib's arrest. Thus, unlike the facts in *Summar*, Hilliard's voluntary election to serve as a confidential informant did not come with conditions that would have put her on notice that her identity would eventually become public under the agreement. To be sure, Officer Wolowiec warned Hilliard that Raqib *may* put the pieces of the puzzle together and realize that the officers stopped him as part of a setup created with Hilliard's assistance. However, the speculative nature of the warning to Hilliard is different from the actual notice given to the confidential informant in *Summar*, where the informant consented to disclose his identity by testifying in open court. Further, in this case, the officer directly disclosed Hilliard's identity to the person he was supposed to protect her from by telling Raqib's companion about the setup. This blatant exposure is nothing like that in *Summar*, where the officer told the prosecutor the informant's

name to assist in developing the public record before trial, rather than a confidant of the very person that the informant revealed to the police without any particular purpose reasonably anticipated under the agreement.

In *Summar*, this court dismissed the § 1983 claim partly because the plaintiff's "voluntary decision to become a confidential informant with all the dangers it presented, not to mention his poor decision to fraternize with criminals in the first place, played a much greater role in his unfortunate demise." *Id.* at 1059 n.2. However, the unique facts of *Summar* are most salient to the court's admonishment of the informant's criminal activities in that case and we decline to engage in such an admonishment here. The confidential informant in *Summar* decided midway through his agreement with the city that he no longer wanted to testify against the criminals, mostly because he had a personal relationship with one of them. *Id.* at 1056. The court's statement regarding the "decision to fraternize with criminals" concerns the informant's choice to *continue* to fraternize with those criminals, rather than aid in their prosecution. *Id.* at 1059 n.2. That reprimand has no bearing in this case, where Hilliard not only honored her end of the bargain but also did not engage with the criminals again until they lured and killed her.[4]

Officer Wolowiec suggests that it was Hilliard's decision to continue to engage in prostitution that led to her demise. However, a reasonable jury could find that Hilliard's prostitution was merely the means by which her murderers chose to lure her, not an act that led to her death. Further, a reasonable jury could find that Officer Wolowiec's act of disclosing Hillard's name to the drug dealer's companion "substantially increas[ed] the likelihood that a

---

[4]It is also important to note that *Summar* was a "special relationship" case and not a "state created danger" case, contrary to Officer Wolowiec's argument. "When the State has so restrained the liberty of the individual that it renders him unable to care for himself, the State has a special relationship with the individual and thus an affirmative duty to protect him." *Jones*, 438 F.3d at 690. However, a "state created danger" claim is a "second exception" to the general rule against holding public officials constitutionally responsible for private acts of violence. *See id.* While *Summar* involved similar facts to this case, it was not a "state created danger" case and thus is not directly on point in our analysis. Because Officer Wolowiec conflates the two doctrines, he failed to proffer a compelling state interest for disclosing Hilliard's identity, which is required in our balancing test articulated in *Kallstrom. Kallstrom*, 136 F.3d at 1064 ("Where state action infringes upon a fundamental right, such action will be upheld under the substantive due process component of the Fourteenth Amendment only where the governmental action furthers a compelling state interest, and is narrowly drawn to further that state interest."). Because Officer Wolowiec testified that he did not know why he disclosed Hilliard's identity and failed to argue a compelling state interest for the disclosure on appeal, he has waived the argument and we conclude the district court did not err in denying his summary judgment motion.

private actor would deprive" her of her liberty interest in personal security. *Kallstrom*, 136 F.3d at 1067.

The district court in this case relied on *Kallstrom* to determine that summary judgment was inappropriate. In *Kallstrom*, the city released private information from undercover police officers' files, including, *inter alia*, addresses, family members' information, and social security numbers, to a criminal defense attorney who then shared it with his clients who were violent gang members. *Kallstrom*, 136 F.3d at 1059. This court held that "while the state generally does not shoulder an affirmative duty to protect its citizens from private acts of violence, it may not cause or greatly increase the risk of harm to its citizens without due process of law through its own affirmative acts." *Id.* at 1066.

Additionally, we stated: "[l]iability under the state-created-danger theory is predicated upon affirmative acts by the state which either create or increase the risk that an individual will be exposed to private acts of violence." *Id.* at 1066. "However, because many state activities have the potential to increase an individual's risk of harm, we require plaintiffs alleging a constitutional tort under § 1983 to show 'special danger' in the absence of a special relationship between the state and either the victim or the private tortfeasor." *Id.* "The victim faces 'special danger' where the state's actions place the victim specifically at risk, as distinguished from a risk that affects the public at large." *Id.* *"The state must have known or clearly should have known that its actions specifically endangered an individual." Id.* (emphasis added).

In *Kallstrom*, this court held that the state's actions of disclosing the undercover officers' information placed them and their family members in "special danger" by substantially increasing the likelihood that a private actor would deprive them of their liberty interest in personal security. *Id.* at 1067. We reasoned that, "[a]nonymity is essential to the safety of undercover officers" investigating gang activity, "especially where the gang has demonstrated a propensity for violence." *Id.* Similarly, Officer Wolowiec's act of disclosing Hilliard's identity to the very individual the state was supposed to protect that identity from placed Hilliard in special danger by increasing the likelihood that the private actor would deprive her of her liberty interest in personal security.

Officer Wolowiec also argues that Nelson cannot prove that the state knew or should have known that its actions would endanger Hilliard's health or safety because Officer Wolowiec's decision to reveal Hilliard's identity was a split second decision that did not involve reflection. In other words, he argues, Nelson cannot prove he was deliberately indifferent to the risk of disclosing Hilliard's identity. In *Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002), this court held that the "deliberate indifference standard is sensibly applied only where actual deliberation is practical." (Internal quotations and citations omitted). "Deliberate indifference has been equated with subjective recklessness, and requires the § 1983 plaintiff to show that the state official knows of and disregards an excessive risk to the victim's health or safety." *Id.* at 513 (citations omitted).

Officer Wolowiec argues that his discussion with Hilliard about the potential risks of being an informant and the fact that he called Hilliard to warn her that Raqib knew her identity shows that he was not indifferent to the risk of her health or safety. However, whether Officer Wolowiec exhibited deliberate indifference is a fact question for the jury to decide. Officer Wolowiec's arguments rely on his own testimony, which requires a credibility determination by the factfinder. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether [s]he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The jury will have to decide whether actual deliberation was practical during the thirty minutes that Officer Wolowiec had between watching the traffic stop and speaking with Clark, and there is evidence on the record that could allow a reasonable jury to conclude that actual deliberation was practical.

Like the district court, we must view the evidence in the light most favorable to Nelson. Doing so requires the conclusion that Officer Wolowiec acted with deliberate indifference when he disclosed Hilliard's identity. The evidence shows that neither he nor Hilliard knew much about Raqib other than he was a drug dealer. The evidence also reflects that Officer Wolowiec believed that Raqib could be dangerous because he removed Hilliard from the room in case Raqib showed up. The evidence shows no necessity for Officer Wolowiec to disclose Hilliard's identity during the thirty-minute window between the traffic stop and the disclosure of Hilliard's

identity to Clark.  Thus, a reasonable jury could find that Officer Wolowiec acted with deliberate indifference when he told Raqib's companion that Hilliard set up Raqib.  Accordingly, the district court properly denied Officer Wolowiec's summary judgment motion because a reasonable jury could find that, under the state created danger theory of liability, he engaged in affirmative acts that increased Hilliard's risk of exposure to private acts of violence, which deprived Hilliard of her clearly established Due Process right to personal security and bodily integrity.[5]

### III.  CONCLUSION

For the foregoing reasons, the district court properly denied Officer Wolowiec's motion for summary judgment as it pertained to Nelson's state created danger claims.  Accordingly, we **AFFIRM** the district court's denial of summary judgment.

---

[5]Officer Wolowiec also argues that Nelson's claim for interference with interfamilial relations fails because this court has not recognized it as a claim under § 1983.  "[D]enials of summary judgment are immediately appealable under the collateral-order doctrine because qualified immunity . . . is effectively lost if a case is erroneously permitted to go to trial."  *Baker v. Union Twp.*, 587 F. App'x 229, 232 (6th Cir. 2014) (internal quotations and citations omitted).  However, Officer Wolowiec does not argue the interfamilial relations issue as a denial of qualified immunity.  Thus, in the absence of a qualified immunity argument, we do not have appellate jurisdiction over the issue because it is not a final decision pursuant to 28 U.S.C. § 1291.  Accordingly, we do not address the issue here.