MURPHY, Circuit Judge, concurring.
CONCURRENCE
Our holding that this suit must end should not be taken to minimize the case's *493 tragic facts-Joann Matouk Romain lost her life and Michelle Marie Romain lost her mother. Joann's estate and daughter make serious accusations against the police who investigated Joann's disappearance, claiming that the police intentionally masked Joann's murder and refused to bring the alleged murderer to justice. But, as the court correctly holds, the plaintiffs did not factually support these charges of misconduct with evidence that would allow a reasonable jury to credit their substantive-due-process claim, which is the only claim preserved on appeal. While not critical to the outcome here, I write to make two additional legal points: Our cases may have overread one statement from DeShaney v. Winnebago County Department of Social Services , 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), while overlooking another statement in that opinion.
First , our court and many others have used a single sentence in DeShaney to adopt different versions of a "state-created-danger" theory of substantive due process compelling the state at times to protect an individual from a private actor's violence. Kallstrom v. City of Columbus , 136 F.3d 1055, 1066 (6th Cir. 1998) ; see Irish v. Maine , 849 F.3d 521, 525-26 (1st Cir. 2017). DeShaney held that the state did not violate due process by failing to protect a child from his father's abuse even though the state knew of the abuse and did not remove the child from harm's way. 489 U.S. at 191, 109 S.Ct. 998. The relevant sentence noted that, "[w]hile the State may have been aware of the dangers that [the child] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." Id. at 201, 109 S.Ct. 998. The point of this sentence was to distinguish cases holding that a state must protect individuals (like prisoners) who are in custody and whose liberty the state has, in fact, restricted. Id. at 198-201, 109 S.Ct. 998. Yet from this line, our court has developed a three-factored test that allows parties who are not under state control to pursue substantive-due-process claims challenging a state's failure to protect them. We allow these claims if a plaintiff can show that: (1) a state actor's "affirmative act" created or increased the risk that the plaintiff would suffer private violence; (2) this risk qualifies as a "special danger" that exceeds the general risk of private violence faced by the public at large; and (3) the state "knew or should have known" that its action would trigger this danger. See, e.g. , Engler v. Arnold , 862 F.3d 571, 575 (6th Cir. 2017) ; Nelson v. City of Madison Heights , 845 F.3d 695, 700 (6th Cir. 2017) ; Cartwright v. City of Marine City , 336 F.3d 487, 493 (6th Cir. 2003).
I am not sure DeShaney supports our test. In many respects, DeShaney is a surprising source for this right. More than any other case, that decision teaches that the Due Process Clause's text-focused on state deprivations of life, liberty, or property without adequate process-makes the clause a poor fit for claims that the state refused to protect a person from private deprivations of life, liberty, or property. 489 U.S. at 194-97, 109 S.Ct. 998. Plaintiffs making allegations like these do not seek notice and a hearing ("process") before the state refuses to protect them; they seek substantive protection from a private actor's crime or tort. Id. at 194-95, 109 S.Ct. 998. And even substantive due process safeguards fundamental rights only against state interference; it does not compel the state to protect those rights against private invasion. Id. at 196-97, 109 S.Ct. 998. DeShaney thus holds that a "State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Id. at 197, 109 S.Ct. 998. Whether or not our test can be defended *494 based on the one sentence in DeShaney , it surely runs counter to the opinion's general thrust-that the Due Process Clause is ill-suited for claims seeking state protection from private violence.
Our test also encounters difficulties when assessed against other substantive-due-process principles. As a general matter, "because the 'guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended ...,' '[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.' " Kerry v. Din , --- U.S. ----, 135 S. Ct. 2128, 2134, 192 L.Ed.2d 183 (2015) (plurality op.) (quoting Collins v. Harker Heights , 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) ). This note of caution should inform our reading of DeShaney . The opinion could just as well be read (consistent with the Due Process Clause's use of the word "deprive") to trigger a right to state aid only for custodial-like situations in which there has been a state deprivation of liberty. See Pinder v. Johnson , 54 F.3d 1169, 1175 (4th Cir. 1995) (en banc) (opinion of Wilkinson, J.); cf. Rios v. City of Del Rio , 444 F.3d 417, 422 (5th Cir. 2006). After all, another sentence says that "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." DeShaney , 489 U.S. at 200, 109 S.Ct. 998. And while our test's "affirmative act" factor also responds to DeShaney 's holding that the Due Process Clause limits state (not private) conduct, it does so with an act/omission "distinction" that "blur[s] when stared at too long." Trinity Lutheran Church of Columbia, Inc. v. Comer , --- U.S. ----, 137 S. Ct. 2012, 2025-26, 198 L.Ed.2d 551 (2012) (Gorsuch, J., concurring in part). A good lawyer often can recast an omission as an act, Pinder , 54 F.3d at 1175-76 (opinion of Wilkinson, J.), which makes "an end run around DeShaney 's core holding," Rivera v. Rhode Island , 402 F.3d 27, 38 (1st Cir. 2005).
As a specific matter, our test could be read as adopting a substantive-due-process framework for private-actor harm that is easier to meet than the framework that governs state-actor harm. For one thing, none of our three factors mentions the Supreme Court's central substantive-due-process teaching in this context: that a state action must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." County of Sacramento v. Lewis , 523 U.S. 833, 847 n.8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). And in the context of privately inflicted harm, this test must focus not on what will typically be egregious misconduct by a private party , but on the state action that increased the risk of that misconduct. Barber v. Overton , 496 F.3d 449, 458 (6th Cir. 2007) (Cook, J., concurring). While our cases have occasionally invoked this demanding standard, e.g. , Schroder v. City of Fort Thomas , 412 F.3d 724, 730-31 (6th Cir. 2005), it should be the critical question in all of these cases.
For another thing, our third factor's "should-have-known" language suggests a classic negligence formulation. E.g. , Global-Tech Appliances, Inc. v. SEB S.A. , 563 U.S. 754, 769-70, 131 S.Ct. 2060, 179 L.Ed.2d 1167 (2011). But the Supreme Court's cases explain that negligence can never establish a substantive-due-process violation. Davidson v. Cannon , 474 U.S. 344, 347-48, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). The Court has instead chosen between two more culpable mental states. It has recognized that state action undertaken with a purposeful intent to harm is "most likely" to be "conscience-shocking." Lewis , 523 U.S. at 849, 118 S.Ct. 1708. And *495 it has debated when, if ever, state action undertaken with a mere deliberate indifference to a risk of harm can prove a substantive-due-process violation in non-custodial settings. Compare id. at 848-54, 118 S.Ct. 1708, with id. at 863-64, 118 S.Ct. 1708 (Scalia, J., concurring in the judgment). We should not permit state liability in this private-harm context to rest on a less culpable mental state. Indeed, despite many cases reciting the should-have-known test, e.g. , Schneider v. Franklin County , 288 F. App'x 247, 252-53 (6th Cir. 2008), others have applied a deliberate-indifference rule, see, e.g. , Schroder , 412 F.3d at 729-31 ; Ewolski v. City of Brunswick , 287 F.3d 492, 510-12 (6th Cir. 2002). That deliberate-indifference element, too, should be the floor in all of these cases.
In sum, the court in this case is quite correct, in my view, to say that our three-factored substantive-due-process test for state-created dangers lacks a "strong foundation."
That brings me to my second point: a different disclaimer in DeShaney deserves more attention than the sentence our cases have quoted. The Supreme Court has said that if a different constitutional provision "provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of substantive due process." Conn v. Gabbert , 526 U.S. 286, 293, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999) (internal quotation marks omitted). In that regard, DeShaney elsewhere noted that the plaintiff had not asserted an equal-protection claim and that the "State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause." 489 U.S. at 197 n.3, 109 S.Ct. 998.
At first blush, the Equal Protection Clause's text-barring the State from "deny[ing] to any person ... the equal protection of the laws," U.S. Const. amend. XIV, § 1 -may provide a more plausible textual hook than the Due Process Clause for claims that the police intentionally denied a specific person (a so-called "class of one") the protection of the criminal laws that everyone else enjoys. Indeed, while it is now well-established that the Equal Protection Clause provides a general antidiscrimination mandate for all state acts, Village of Willowbrook v. Olech , 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam), some commentators have cited historical materials suggesting that remedial laws (like the laws implicated here) fall within the center of the "protection of the laws," see John Harrison, Reconstructing the Privileges or Immunities Clause , 101 Yale L.J. 1385, 1435-36 (1992) (citing 1 W. Blackstone, Commentaries *55-56). These protective laws stand in contrast to, say, public-employment decisions in which "the government acts in a more proprietorial and less regulatory capacity." SECSYS, LLC v. Vigil , 666 F.3d 678, 690 (10th Cir. 2012) (opinion of Gorsuch, J.) (discussing Engquist v. Ore. Dep't of Ag. , 553 U.S. 591, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008) ).
History supports this instinct too. "[T]he suppression of private violence [was] the core concern of the Equal Protection Clause." Christopher R. Green, The Original Sense of the (Equal) Protection Clause: Subsequent Interpretation and Application , 19 Geo. Mason U. C.R. L.J. 219, 254 (2009). "The unwillingness of the law enforcement authorities in southern states to protect the newly freed blacks from white vigilante groups such as the Ku Klux Klan was an important motive for the enactment of the equal protection clause." Del Marcelle v. Brown Cty. Corp. , 680 F.3d 887, 889 (7th Cir. 2012) (en banc) (opinion of Posner, J.). For example, Congress enacted the 1866 Civil Rights Act to give "nonwhites 'full and equal benefit of *496 all laws and proceedings for the security of person and property, as is enjoyed by white citizens.' " David P. Currie, The Constitution in the Supreme Court: The First Hundred Years, 1789-1888 , at 349 (1985) (quoting Act of Apr. 9, 1866, § 1, 14 Stat. 27, 27). And the framers enacted the Fourteenth Amendment to ensure this act's constitutionality. Id. at 347-49. To be sure, the Equal Protection Clause's primary target may have been racially discriminatory refusals to protect persons from private violence. Id. at 349. But, whatever its purpose , the Equal Protection Clause's text is not limited to race-based denials of the protection of the laws. Cf. District of Columbia v. Heller , 554 U.S. 570, 577-78, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) ; Crawford v. Washington , 541 U.S. 36, 61-62, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
The Equal Protection Clause's text and history suggest that the right question to ask is: When, if ever, do equal-protection principles give a specific individual the right to challenge a state officer's intentional refusal to provide the protection of the laws that keep the public safe from private violence? Figuring out the right question is the easy part; determining the appropriate answer is much harder. Thoughtful jurists have suggested a variety of approaches to this class-of-one problem. Perhaps the "den[ial]" of the "equal protection of the laws" in the law-enforcement context simply does not occur unless there has been class-based discrimination like the racial discrimination that motivated the clause. Cf. Del Marcelle , 680 F.3d at 901 (Easterbrook, C.J., concurring in the judgment); Flowers v. City of Minneapolis , 558 F.3d 794, 799-800 (8th Cir. 2009). Or perhaps the clause should reach claims alleging a one-off refusal to provide police protection only if the refusal flows from personal reasons (such as animosity toward the plaintiff) that are unrelated to public duties. Cf. Del Marcelle , 680 F.3d at 889 (opinion of Posner, J.). Or maybe the traditional equal-protection test works just fine here, requiring a party to show that the police have intentionally discriminated against the plaintiff and that the discrimination lacked a rational basis. Cf. id. at 913 (Wood, J., dissenting); SECSYS , 666 F.3d at 689-90 (opinion of Gorsuch, J.). Any approach also must account for the tradition of prosecutorial and law-enforcement discretion. See Town of Castle Rock v. Gonzales , 545 U.S. 748, 760-61, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005).
I leave the scope of equal protection for other cases. For present purposes, I note only that the equal-protection question strikes me as a more appropriate question to ask for the types of failure-to-protect allegations that are presented in this appeal. That, in turn, indicates that the due-process question is the wrong question to ask. See Conn , 526 U.S. at 293, 119 S.Ct. 1292. So I am inclined to think this area worthy of reexamination in a suitable future case.